(No. 21437.—
THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* MICHAEL FEINBERG, Circuit Judge, Respondent.

*Opinion filed May 17, 1932—Rehearing denied June 14, 1932.*

ORIGINAL petition for *mandamus*.

FLOYD E. THOMPSON, for relator.

LOUIS E. HART, and RICHARD S. TUTHILL, (IRVING HERRIOTT, of counsel,) for respondent.

Mr. JUSTICE DUNN delivered the opinion of the court:

On April 15, 1932, at the April term, a petition for a writ of *mandamus* in the name of the People was presented by the Chicago Bar Association, as relator, with a motion

for leave to file it, and leave being granted it was filed. Michael Feinberg, who was named as respondent, appeared forthwith and demurred to the petition. Briefs were filed, and on April 16 the cause was argued by counsel for the respective parties and was submitted for decision upon such argument and the briefs filed. The prayer of the petition was that a writ of *mandamus* be issued directed to the respondent, commanding him without delay to expunge from the records of the criminal court of Cook county certain orders which he had assumed to enter as a judge of the criminal court of Cook county in the matter of the application for a special grand jury and the appointment of a special State's attorney, and particularly the order for the drawing of a special grand jury and the issue of a venire for their attendance before the court on April 8 to constitute an additional grand jury for the term for the special purpose of investigating and considering all of the matters, conditions and things set forth in the petition, which was included at length in the order, as well as the other matters not stated in the petition which the court in its order found require immediate investigation, and for no other purpose. In the same order Louis E. Hart was appointed special State's attorney to conduct, prosecute and control the investigation before the special grand jury, to prosecute all indictments and informations returned by it, with all the power, authority and duty of a State's attorney. In addition to this order the petition prayed that the order of April 8 impaneling the special grand jury, and all other orders which Feinberg had attempted to enter as a judge of the criminal court in the matter of the application for a special grand jury and the appointment of a special State's attorney, be expunged.

Michael Feinberg is a judge of the circuit court of Cook county and has been such judge for several years.

The organization and jurisdiction of the courts of the State are provided for by article 6 of the constitution. Sec-

tion 1 vests all the judicial power of the State, except as otherwise provided in article 6, in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and in such courts as may be provided by law in and for cities and incorporated towns. Section 11 authorizes the creation of Appellate Courts after 1874. Section 12 declares the original jurisdiction of the circuit courts of all causes in law and equity, and section 13 requires the division of the State, exclusive of Cook county and other counties having a population of 100,000, into judicial circuits. At that time no county except Cook had a population of 100,000. The provisions in regard to the courts of Cook county were contained in other sections of article 6 numbered from 23 to 28, inclusive. Section 23 provided that Cook county should be one judicial circuit, and the circuit court should consist of five judges until their number should be increased as provided in the section. The then present judge of the circuit court and the then present judge of the recorder's court of the city of Chicago were to be two of the judges of the circuit court, and the superior court of Chicago was continued and called the superior court of Cook county. By section 26 the recorder's court of Chicago was also continued and called the criminal court of Cook county, and it was provided that it should have the jurisdiction of a circuit court in all cases of criminal and quasi-criminal nature arising in Cook county or that might be brought before the court pursuant to law, and all recognizances and appeals taken in the county in criminal and quasi-criminal cases were required to be returnable and taken to the court. The court was given no jurisdiction in civil cases, except those on behalf of the people and incident to such criminal or quasi-criminal matters, and to dispose of unfinished business. It was directed that "the terms of said criminal court of Cook county shall be held by one or more of the judges of the circuit or superior court of Cook county, as nearly as may be in alter-

nation, as may be determined by said judges, or provided by law. Said judges shall be *ex-officio* judges of said court."

The circuit court of Cook county has adopted rules for the organization and government of that court which are now in effect and had been for more than a year prior to the filing of the petition. Rule 1 provides that the court shall be organized to sit in two divisions—the chancery division and the law division; rule 2, that each division shall have one representative on the executive committee of said court, such representatives to be elected by the judges of the court: rule 8, that the executive committee shall consist of the chief justice of the court, selected as provided by law, and the representatives from the two divisions. Rule 3 provides that the assignments to the two divisions of the court shall be made annually by a vote of a majority of the judges of the court. Rule 5a is as follows: "A majority of all the judges of the court, if in their judgment an emergency requires or the due administration of the business of the court makes it advisable, shall have power to transfer any case to any other judge of the court, and it shall be the duty of such judge to hear and decide the case so transferred to him as expeditiously as possible." Rule 6 is: "The judges who are to sit in the criminal court of Cook county shall be assigned by the executive committee of the court from among the judges of the law and chancery divisions of the court, as nearly as may be in rotation." Rule 7 is: "All causes and matters shall be distributed among the two divisions of the court and the judges thereof in such manner as may from time to time be determined by any orders of the executive committee."

The criminal court of Cook county has adopted rules governing the organization and the management of the business of that court, and those rules are now in force and have been for more than one year last past. Rule 11 provides for the division of the court into branches and the designation of such branches. Rule 12 provides for the

election by the judges of a chief justice and that he shall preside over branch 1. Rule 13 is as follows: "The chief justice shall exercise the general administrative powers of the court, and to that end shall order and impanel all grand juries, have charge of general arraignments, calls of the docket, assignment of the cases to the several branches and preparation of trial calendars or lists of cases, and hear all *ex parte* applications and all motions except those in cases assigned to the other branches. In his absence such power shall be exercised by one of the associate judges present, in the numerical order of his branch." Rule 14 provides that the clerk shall prepare trial calendars under the direction of the chief justice. Rule 15 provides that the chief justice shall each term assign the cases for trial to the several branches. Rule 18 provides that the clerk of said court shall at the end of each term report to the chief justice the number of cases pending and other facts relating to the business of the court. Rule 19 provides: "If in the judgment of the chief justice additional judges shall at any time be required, he shall present a written request therefor to the chief justice of the circuit and superior courts, stating his reasons therefor."

The criminal court of Cook county consists of seven judges, namely, Harry M. Fisher, George Fred Rush and Philip L. Sullivan, judges of the circuit court of Cook county regularly assigned to service in the criminal court by the judges of the circuit court for the court year 1931-32, and John Prystalski, James J. Kelly, Rudolph Desort and Walter T. Stanton, judges of the superior court of Cook county regularly assigned to the criminal court by the judges of the superior court for the court year 1931-32, and all of the judges so assigned to service in the criminal court have accepted such assignment and are now, and have been since the opening of the September, 1931, term thereof, regularly holding the several branches of the criminal court. They have elected Harry M. Fisher chief justice of the court,

and he is now acting as chief justice and is holding branch 1 of the criminal court. The criminal court is now, and for several years last past has been, held in the criminal court building of Cook county, which is a building providing facilities for that court and its officers and is devoted exclusively to the business of that court and is located in the city of Chicago more than three miles from the court house of Cook county.

A petition addressed to the judges of the circuit court of Cook county asking for the impaneling of a special grand jury and the appointment of a special State's attorney for Cook county was presented to the Hon. Michael Feinberg in the court room in the court house of Cook county, Illinois, regularly occupied by him as a chancellor of the circuit court. Judge Feinberg thereupon undertook to convene a branch of the criminal court of Cook county, with himself as presiding judge, M. P. Delano, chief deputy clerk of the criminal court, being then in attendance and acting as such clerk, and the sheriff of Cook county being in attendance. He also directed the clerk of the criminal court of Cook county to file the petition, and entered an order directing that a special venire issue for an additional grand jury for the April, 1932, term of the criminal court, that the clerk of the criminal court proceed to draw from the jury box the names of one hundred persons and certify them to the sheriff, and that the sheriff summon such persons to appear in the court room of Judge Feinberg on April 8, 1932. In obedience to such order the clerk filed the petition, spread the order upon the records of the court, drew and certified the names of one hundred persons to the sheriff of said county, and the sheriff thereupon summoned those persons and they appeared in the court room of Judge Feinberg in the court house in said county. Judge Feinberg thereupon caused twenty-three of such persons to be impaneled as a special grand jury, to serve as an additional grand jury for the criminal court for the April, 1932,

term, and appointed Louis E. Hart a special State's attorney to assist the grand jury in its investigation and to prosecute all indictments returned by it. Hart accepted the appointment as such special State's attorney, qualified as such, and has been since the date of his appointment acting as such. The special grand jury immediately went into session in a room set aside for it in the court house and has been since the date of its impaneling assuming to act as a grand jury of the criminal court, has used the process of that court in commanding witnesses to appear before it, and has by its foreman administered an oath to such witnesses and has examined such witnesses touching their knowledge of crimes alleged to have been committed in Cook county. George Seif is the clerk of the criminal court and was directed by the chief justice of that court to refuse to appear before Judge Feinberg and refuse to recognize him as judge of the criminal court, and thereupon Judge Feinberg entered an order appointing Daniel Buckley deputy clerk of the criminal court, and also entered a rule upon Seif to show cause why he should not be punished for contempt of court.

The respondent contends that the circuit court of Cook county is vested with jurisdiction in all cases of a criminal nature, and that any judge of that court is authorized by the act concerning jurors (Rev. Stat. 1874, chap. 78, sec. 19,) to cause a special venire to be issued at any time when he shall be of the opinion that public justice requires it. In *Berkowitz* v. *Lester*, 121 Ill. 99, an action was brought in the circuit court of Cook county to recover a statutory penalty imposed by section 132 of the Criminal Code. The action being quasi-criminal, the court dismissed it on motion of the defendant on the ground that the circuit court was without jurisdiction of the subject matter. The decision of this court was that the jurisdiction of the criminal court of Cook county in criminal and quasi-criminal cases was concurrent with the circuit court but not exclusive. This

is directly contrary to the contention of the relator, but we are asked to re-examine the question and we have done so.

The rules of the circuit court which have been set out, providing for the practical and effective administration of the business of the court, are within the power of the court. Rules must, of course, be consistent with the law. The executive committee established by the rules has supervision of the work of the court, and it is the committee's duty to see to the due administration of its business. If the arrangement of the disposition of business embodied in the rules can be disregarded, any individual judge might proceed independently, to the destruction of any system in the administration of business. The rules are the rules of the court and are binding on each of the judges, unless in a particular case, for good cause, they may be disregarded. (*People* v. *Smith,* 275 Ill. 210.) The recorder's court of Chicago, which was continued as the criminal court of Cook county, was an independent court, entirely distinct from the superior court of Chicago and the circuit court of Cook county, having a clerk and a judge of its own. It did not lose its identity under the constitution of 1870. Its clerk was elected as before, but its judges were required to be selected from the judges of the circuit or superior court, as nearly as might be in alternation, by the choice of the whole number of judges of the respective courts or as might be provided by law. Since no other method has been provided by law, the rule, which expresses the determination of the judges, fixes the method of appointment. "Said judges shall be *ex-officio* judges of said court." "Said" judges refers to the one or more of the judges of the circuit or superior court by whom the terms of the criminal court are to be held, determined by the judges of the circuit or superior court. "Said" judges who are designated to hold the terms of the criminal court, and not the whole body of judges who designate from their own number the

one or more judges to hold the terms of the criminal court, are the *ex-officio* judges of the criminal court.

The jurisdiction of the criminal court is declared by the section of the constitution which provides for the continuance of the recorder's court under the changed name in this language: "It shall have the jurisdiction of a circuit court, in all cases of a criminal and quasi-criminal nature, arising in the county of Cook, or that may be brought before said court pursuant to law." The conclusion to be drawn in regard to the question of jurisdiction is not, however, to be reached merely by a consideration of these words, but, as in the case of all written instruments, the intention of the makers of the constitution must be ascertained from a consideration of all the provisions of the instrument and all the language of the makers. Among these provisions is that which declares that "all recognizances and appeals taken in said county, in criminal and quasi-criminal cases, shall be returnable and taken to said court." How can this requirement of the constitution be given effect if the circuit and criminal courts of Cook county were intended to continue in the exercise of the jurisdiction in criminal and quasi-criminal cases which the circuit court and the recorder's court of the city of Chicago exercised before the adoption of the constitution? Recognizances are important, if not essential, incidents in the exercise of jurisdiction in criminal and quasi-criminal cases, and what could have been the reason of their abolition in the case of the circuit and superior courts, and the consequent hampering of the efficiency of such courts, if it was intended that they should continue to exercise the criminal jurisdiction which they had theretofore exercised? A court into which the constitution prohibited the return of any recognizance could hardly exercise a general criminal jurisdiction, and the difficulty, if not impossibility, of its doing so would seem conclusive against an intention of the makers of the

constitution that the circuit court should continue in the exercise of its criminal jurisdiction but that no recognizance should be taken returnable to that court. Appeals were also allowed before 1870, by statute, in criminal cases from the judgments of justices of the peace to the circuit court, and have been, and are now, allowed, except in the county of Cook, to the circuit and county courts. Thus the constitution provides that the jurisdiction of the circuit court of Cook county is not necessarily the same in all respects as that of circuit courts in other counties, for, while section 12 of article 6 provides that the circuit court shall have such appellate jurisdiction as is or may be provided by law, section 26 expressly provides that all appeals in criminal or quasi-criminal cases shall be taken to the criminal court of Cook county.

From the debates of the constitutional convention it appears that the first proposal to continue the recorder's court was a resolution that it be continued and should be called the court of common pleas, and should have concurrent jurisdiction with the circuit court of Cook county in all criminal cases arising in said county except treason and murder and in all cases upon recognizances and against bail, but should have no other jurisdiction in civil cases except to dispose of unfinished business unless otherwise provided by the General Assembly. This resolution, with others, was referred to the committee on judiciary, which reported the present section 26 of article 6 of the constitution, omitting any reference to concurrent jurisdiction with the circuit court. The convention having before it the first resolution providing that the recorder's court should have concurrent jurisdiction with the circuit court in Cook county in all criminal cases, afterward adopted without any change section 26 as reported by the committee, omitting all reference to the question of concurrent jurisdiction with the circuit court, and at the same time containing the provision that all recognizances and appeals taken in said county in

criminal and quasi-criminal cases should be returnable and taken to the criminal court. From all this it would seem to appear with reasonable certainty that it was not intended that the circuit court should after the adoption of the constitution exercise any criminal jurisdiction. The recorder's court before that time also had civil jurisdiction, but there was included in section 26 the provision that the criminal court should have no jurisdiction in civil cases except in those on behalf of the people and incident to such criminal or quasi-criminal matters and to dispose of unfinished business, the "unfinished business," of course, referring to the unfinished civil business on the docket of the court at the date of the adoption of the constitution.

Section 26, in providing that the criminal court shall have the jurisdiction of a circuit court in all cases of criminal and quasi-criminal nature, refers not to the circuit court of Cook county but to the general jurisdiction of a circuit court as established by the constitution, which provides in section 12 of article 6 that the circuit courts shall have original jurisdiction in all causes in law and equity. These words mean, merely, that the criminal court shall have the same jurisdiction in all cases of criminal and quasi-criminal nature as a circuit court—not the circuit court of Cook county—and of themselves do not tend to show that such jurisdiction was exclusive, but, taken in connection with the other provisions of the section, prohibiting the return of recognizances and the taking of appeals in criminal and quasi-criminal cases to the circuit court, taking away the civil jurisdiction of the criminal court and making the jurisdiction exclusively criminal—all these, in the light of the action of the constitution in omitting the provision for concurrent jurisdiction with the circuit court, clearly show that it was not the intention that the circuit court of Cook county should continue to exercise any criminal jurisdiction but that the jurisdiction of the criminal court was intended to be exclusive.

There are no elected judges of the criminal court of Cook county. They are all selected from the judges of the circuit or superior court by their associates, and become, by virtue of their selection and by virtue of their offices, *ex-officio* judges of the criminal court. A judge of the circuit court is not a judge of the criminal court, *ex-officio* or otherwise, until he has been assigned to that service by the judges of the circuit court in accordance with the rules of the court regulating such assignment. No judge of the circuit court, unless so assigned, has the right to hold a term of the criminal court. In *United States Life Ins. Co.* v. *Shattuck,* 159 Ill. 610, a cause was tried in the superior court of Cook county and a judgment was rendered against the defendant, the insurance company, from which it appealed to the Appellate Court. In this court the appellee moved to strike from the transcript the purported bill of exceptions, and the decision depended upon the validity of a purported order extending the time for filing it. This order purported to have been made by Judge Payne, who presided at the trial in the superior court on May 15, 1894, the day before the time for filing the bill of exceptions expired. The supplemental bill of exceptions shows that if the order was made by Judge Payne it was made by him while he was actually sitting and presiding as judge of the criminal court of Cook county and not while he was sitting as judge of the superior court of Cook county. The order itself was written on a sheet of paper and purported to be in the case of Sophia Shattuck against the United States Life Insurance Company in the superior court of Cook county of the March term, 1894, and to grant leave to extend the time for filing the bill of exceptions from sixty days, as granted, to eighty days. It was signed, "Enter.— J. B. P.—May 15, '94," in Judge Payne's handwriting, and indorsed, "Filed May 17, 1894.—S. D. Griffin, Clerk." The words and figures were written on the paper by Judge Payne on May 15, 1894, while he was sitting and presiding as

judge in the criminal court. This court said that the criminal court and the superior court are wholly separate and distinct courts, each having its own separate and distinct organization, clerk, record and place where it is held. The jurisdiction of the two courts is entirely different, and when a judge of the superior court presides in and holds a term of the criminal court he does so not in his official capacity as a judge of the superior court but in his capacity as *ex-officio* judge of the criminal court, the latter part of section 26 of the constitution providing that when he is holding a term of the criminal court he "shall be *ex-officio* judge of said court." "While holding the criminal court he is that court in concrete form; in the exercise of judicial functions is the agent of that court, only, and speaks and acts solely for it and not for some other court that he is not holding." *United States Life Ins. Co.* v. *Shattuck, supra.*

*Greene* v. *People,* 182 Ill. 278, is another case in which the authority of judges of the circuit or superior court of Cook county as judges of the criminal court of Cook county was the subject of consideration by this court. The plaintiff in error had been convicted in the criminal court of perjury, and, among other errors assigned, it was argued that the judge who presided at the trial (who in this case, also, was Judge Payne, of the superior court of Cook county,) was without jurisdiction because he had not been assigned as a judge to the criminal court for that year by the judges of the circuit and superior courts, others having been appointed by them to that duty. No objection was made to the fairness and impartiality of the judge or that there could not be as fair and impartial a trial before him as before either of the judges who had been assigned to duty in that court. "It also appears," said the court, "though not materially, as we regard the case, that a necessity existed for calling in a judge not assigned," each of the assigned judges being so engaged at the time as to be unable to hear the case. The court, without any mention of *Berk-*

*owitz* v. *Lester, United States Life Ins. Co.* v. *Shattuck,* or any other decision, decided that a judge of the circuit or superior court of Cook county is authorized to preside in the criminal court of Cook county without any previous designation for that duty by the judges of the circuit and superior courts. After quoting the last two sentences of section 26 of article 6 of the constitution the opinion of the court continues: "It is not denied that Judge Payne was one of the judges who by the terms of the constitution were authorized to hold said criminal court, nor that he was one of .the judges who by its language were *ex-officio* judges of that court. We think it too clear for argument that his powers and jurisdiction in that court did not depend upon whether or not the several judges of the circuit and superior courts had designated him for that duty. The language, 'as nearly as may be in alternation, as may be determined by said judges,' is inserted in the section not for the purpose of conferring or determining who shall have jurisdiction to hold the court, because that is expressly stated in the other language of the section—that is, the terms shall be held by any of the judges of the circuit or superior court, all of whom are *ex-officio* judges of that court—and the designation of certain of those judges is merely a regulation for the convenience of the judges themselves."

The above discussion is hardly adequate to the decision of the question in view of the case of *Berkowitz* v. *Lester, supra,* where two of the judges dissented in an opinion in which, as well as in the opinion of the majority of the court, the construction of the section of the constitution under consideration was discussed at some length. Counsel's failure to deny in argument that Judge Payne was one of the judges who by the terms of the constitution were authorized to hold the terms of the criminal court, or that he was one of the judges who by its language were *ex-officio* judges of that court, seems to have been regarded as jus-

tifying the conclusion stated in the opinion that it is too clear for argument that his powers and jurisdiction in that court did not depend upon whether or not the several judges of the circuit and superior courts had designated him for that duty. The opinion also ignores *United States Life Ins. Co. v. Shattuck, supra,* and its statement that when a judge of the superior court holds a term of the criminal court he does so not in his official capacity of a judge of the superior court but in his capacity of *ex-officio* judge of the criminal court, the latter part of section 26 of article 6 of the constitution providing that when he is holding a term of the criminal court he "shall be *ex-officio* judge of said court." The question was therefore at least worthy of consideration and not to be disposed of as too clear for argument. The last clause of the next to the last sentence of section 26, "as may be determined by said judges, or provided by law," controls the whole sentence and not merely the preceding clause, "as nearly as may be in alternation." It was not merely the alternation of service which was to be "determined by said judges, or provided by law," but also the number and names of the judges. "Said judges," in this phrase, refers back to "the judges of the circuit or superior court of Cook county," all of whom participate in the determination of the number and names of the particular judges designated to hold the terms of court. The section then closes with the sentence, "Said judges shall be *ex-officio* judges of said court." The court is, of course, the criminal court. "Said judges" must refer to the judges so designated and not to the judges who made the designation. The subject matter of the preceding sentence is the designation of judges to hold the terms of the criminal court. That sentence authorizes the designation of the individual judges who shall hold those terms. The closing sentence says, "said judges shall be *ex-officio* judges of said court"—that is, of the criminal court. The object of the construction of this section is to determine the intention expressed by the words

of the constitution, and we cannot attribute to the words of section 26 a meaning fraught with such possibilities of confusion and disorder as would exist if each of the judges of the circuit and superior courts of Cook county, who now number forty-eight, were authorized, whenever in his opinion public justice required it, to order a special venire to issue for a grand jury and proceed on his own initiative to administer the criminal law on his own responsibility, regardless of the rules which have been adopted by the whole body of the judges of those courts. No such construction is necessary or is in our judgment reasonable. The rules of court, where not in violation of the constitution or a statute, have the force of law and are binding on judges, officers of court and litigants.

In our judgment, based upon the principles announced in *United States Life Ins. Co.* v. *Shattuck, supra,* and the construction of section 26 of article 6 of the constitution, the only judges of the criminal court of Cook county are those judges of the circuit and superior courts of Cook county designated for that service from time to time in the manner prescribed by the rules of court to hold the terms of the criminal court. The case of *Berkowitz* v. *Lester, supra,* is out of harmony with that case and the conclusions reached in this opinion and is overruled. *Greene* v. *People, supra,* so far as inconsistent with this opinion, is also overruled. There are other cases in which the jurisdiction in criminal cases of the criminal court, of the circuit courts in counties other than Cook and in the municipal court of Chicago have been considered, but we have found no adjudication which in our judgment affects the conclusion we have reached. In *Ferguson* v. *People,* 90 Ill. 510, the first syllabus paragraph states that "the circuit court has no original jurisdiction in cases of assault or assault and battery, it being conferred upon justices of the peace," but the opinion does not refer to the constitution. It construes sections 381 and 392 of the Criminal Code of 1872.

The constitutional question was not considered and the decision was overruled in *Wilson* v. *People,* 94 Ill. 426. In *People* v. *Jacobson,* 247 Ill. 394, the opinion cited *Berkowitz* v. *Lester, supra,* to the point that the jurisdiction of all cases of a criminal nature vested in the criminal court of Cook county was not exclusive, and called attention to the fact that section 12 of article 6 of the constitution conferred upon the circuit court jurisdiction of all causes in law and equity in language as broad as that which in section 26 confers on the criminal court of Cook county jurisdiction of all cases of a criminal nature, yet in *Myers* v. *People,* 67 Ill. 503, we held that the jurisdiction conferred on the circuit court by section 12 was not exclusive. The conclusion of the court in the *Jacobson case* was that "the jurisdiction conferred upon any court by the constitution cannot be diminished by the legislature, but in the absence of a constitutional prohibition the legislature may confer concurrent jurisdiction of the same subject matter upon another court." The case might have been decided by a reference to the provision of section 34 of article 4 of the constitution which provides that "in case the General Assembly shall create municipal courts in the city of Chicago it may abolish the offices of justices of the peace, police magistrates and constables in and for the territory within said city, and may limit the jurisdiction of justices of the peace in the territory of said county of Cook outside of said city to that territory, and in such case the jurisdiction and practice of said municipal courts shall be such as the General Assembly shall prescribe." The principal question in the case was whether section 2 of the Municipal Court act, so far as it attempted to confer jurisdiction in certain criminal cases on the municipal court, violated section 26 of article 6 of the constitution. *People* v. *Warren,* 260 Ill. 297, which also cites *Berkowitz* v. *Lester, supra,* is to the same effect—that the General Assembly may confer concurrent jurisdiction on the municipal court but cannot take

away jurisdiction conferred by the constitution. These cases all follow *Berkowitz* v. *Lester, supra,* and the constitutional question has been given no further consideration than is contained in that case, the *Shattuck case* and the *Greene case.* The meaning of the constitution is not to be ascertained by giving too great weight to a single phrase, sentence or section. Its several provisions are all parts of one instrument and must be construed together, giving each its proper consideration. Article 6 establishes the judicial system of the State, and each sentence or phrase may not be construed and its meaning determined by itself. Each expression is subject to modification by other language of the instrument, and only when each part of the instrument is considered with reference to every other part and all their relations can a true construction be reached.

The orders which the relator seeks by its petition to have expunged purport to be judicial orders of the criminal court, which could be performed only by a judge of the court while presiding in the court and exercising the judicial functions of the court. (*Hake* v. *Strubel,* 121 Ill. 321; *Hawes* v. *People,* 129 id. 123; *Pardridge* v. *Morgenthau,* 157 id. 395.) The orders made by the respondent off the bench of the criminal court without an assignment to hold it and in the court room in the court house of Cook county which was regularly occupied by him as a chancellor of the circuit court were void and of no effect anywhere, at any time. The respondent had no jurisdiction to make those orders or any orders in the criminal court of Cook county, and they were entered on the records of that court without any authority of law. The petition prays for a writ of *mandamus* commanding the respondent to expunge the orders, but he has no more jurisdiction to expunge the orders than he had to make them. They are void and mean no more than the blank pages on which they were written. No one is required to obey them or to act in any way in regard to them. They may be wholly disregarded. Since the re-

spondent has no jurisdiction to cause them to be expunged, this court cannot, therefore, make an order requiring him to do so.

Accordingly, the demurrer to the petition is sustained, the petition is dismissed and the writ of *mandamus* is denied.

*Writ denied.*