## Village of LaGrange, Petitioner, v. William G. Clark and Mary E. Clark, Respondents.

### Gen. No. 37,539.

270

Opinion filed December 31, 1934. Rehearing of appellant and appellees denied and opinion modified January 12, 1935.

STEVENS, CARRIER & GRIFFITH, of Chicago, for petitioner; GEORGE M. STEVENS and MELVIN L. GRIFFITH, of counsel.

OWEN RALL, of Chicago, for respondents.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from an order of the circuit court of Cook county granting a new trial. On September 23, 1932, plaintiff commenced an action in debt against defendants to recover penalties for claimed violations of its zoning ordinance. There was a trial before a jury and on March 2, 1934, a verdict was returned in plaintiff's favor, assessing its damages at the sum of $2,770. Defendants were given leave to file and filed a written motion for a new trial, specifying 26 grounds therefor, and on March 31, 1934, after argument, the court entered the order granting the new trial, which order plaintiff here seeks to reverse.

Within 30 days thereafter plaintiff, after due notice and in compliance with section 77 of the Civil Practice Act of 1933, Cahill's St. ch. 110, ¶ 205, Rule 30 of the Supreme Court and Rule 20 of this Appellate Court, filed a transcript of the record of the proceedings at

the trial and a written motion praying that the time to file its abstract and its petition for leave to appeal be extended for 15 days from April 30, 1934. The motion was allowed. On May 15, 1934, plaintiff filed its abstract and said petition, to which defendant thereafter filed an answer and plaintiff a reply. On June 12, 1934, plaintiff's petition for leave to appeal was allowed. Subsequently defendants, by leave of this court, filed an additional abstract and an additional brief, to which plaintiff filed a reply brief. On July 7th, defendants' motion to transfer the cause to the Supreme Court was denied. On October 2nd, the cause was taken and set for oral argument and defendants' motion for leave to assign cross errors was reserved to the hearing. On October 16, 1934, the cause was argued orally by respective counsel. Defendants' said motion for leave to assign cross errors, which was reserved to the hearing, will now be allowed.

Plaintiff's declaration in debt, filed November 4, 1932, consisted of 277 counts and charged 277 separate violations of the zoning ordinance of the village, beginning on December 21, 1931, and continuing for *each day* thereafter up to and including September 22, 1932. In the first count it is averred in substance that *prior to* December 21, 1931, the village had adopted and published a zoning ordinance (parts of the ordinance set forth), which is still in force; that on December 21, 1931, and before and after said date and until the commencement of this suit, defendants were the owners of certain real estate (describing it), situated in the village of LaGrange, Cook county, Illinois, the fee simple title to which they had obtained by conveyance from Catherine McCallister and Arthur S. McCallister; that the real estate, improved by a dwelling house, was within the "A" residence district of the village; that under the ordinance the house could not be used for any other purpose than as a

"single family dwelling," which is defined to be "a detached building having accommodations for and customarily occupied by one family only, and including a private garage with living quarters therein"; that a "family" is defined to be "any number of individuals living and cooking together on the premises as a single housekeeping unit"; that at the time of the adoption of the ordinance and prior thereto the dwelling and premises were being used and had been used by and for a single family, as defined in the ordinance, and that for a long period of time thereafter such conforming use was continued; that no permit of the building commissioner has ever been issued allowing a change of use in the building or any part thereof; that on December 21, 1931, the defendants used the building and premises for "two family dwellings, that is to say *for the housing of two separate and distinct families,* as defined in said ordinance, contrary to the terms and provisions thereof"; that it was provided in the ordinance that "any person, firm or corporation who violates, disobeys, . . . or refuses to comply with, or who resists the enforcement of, any of the provisions of the ordinance shall, upon conviction, be fined not less than $10, nor more than $100 for each offense; each day that a violation is *permitted* shall constitute a separate offense." WHEREFORE, and by virtue of the statutes and ordinances in such case made and provided, "an action hath accrued to plaintiff to have and demand of and from defendants the sum of $100, *penalty,* as provided in said ordinance."

The remaining 276 counts contain substantially the same averments, except that in each count the day of the claimed violation of the ordinance is a different one,—viz., respectively, from December 22, 1931, up to and including September 22, 1932. And the declaration concludes: "Yet defendants, though requested, have not paid to plaintiff the several sums of money in the several counts specified, together

amounting to the sum of $27,700, or any part thereof, but refuses so to do''; to plaintiff's damage, etc.

After defendants' general and special demurrers had been overruled, they, by leave of court, filed two pleas,—(1) that they "*did not owe* to plaintiff the said sums of money above demanded of them, or any part thereof," and (2) that "plaintiff *has not,* at any time since the enactment and adoption of the ordinance . . . *in any wise been damnified,*" etc. Thereafter they filed a written motion to dismiss the suit because "It is a case *quasi-criminal* in nature," arising within Cook county, and that under the constitution of Illinois the *circuit* court of Cook county has *no jurisdiction of the subject matter.*" On January 20, 1934, after argument, the motion was denied. On that hearing before Judge Daniel P. Trude, defendants submitted two propositions to be held as law, but the judge refused both of them, viz.: (1) That the suit is a case *quasi-criminal* in nature arising within Cook county, "as appears from the pleadings filed"; and (2) that the circuit court of Cook county, under the constitution of Illinois, "has no jurisdiction of a case *quasi-criminal* in nature arising within Cook county, but that jurisdiction of such case *is vested exclusively* by said constitution in the *criminal* court of Cook county."

On February 28, 1934, the cause came on for trial before court and jury. Judge Herbert S. Anderson of the city court of Charleston, Illinois, but then sitting as one of the judges of the circuit court of Cook county, was the trial judge. Defendants, by their attorney, objected to the calling of a jury and again made a motion to dismiss the suit upon the same grounds as previously urged before Judge Trude, above mentioned. Judge Anderson overruled the objection and denied the renewed motion, stating: "I will follow Judge Trude's decision."

Thereupon a jury trial was had at which much oral and written evidence was introduced. Plaintiff called five witnesses, among them Roberts Mann and the defendant, William G. Clark. Plaintiff also introduced in evidence certain instruments and writings. Defendants called four witnesses, among them the defendant, Mary E. Clark. During the cross-examination of Mr. Clark, as plaintiff's witness, and upon objections made, the court would not allow him to answer certain questions, and defendants' subsequent offers as to what was sought to be shown by the witness were denied. After Mr. Clark had finished his testimony plaintiff's attorney, out of the presence of the jury, requested that the court call Mrs. Catherine McCallister as the *court's* witness because, as the attorney stated, "there is apparently a set up here between the McCallisters, the Clarks and the Manns." At first the court decided against the request, but afterward (his attention having been called to certain happenings in the court room) stated in the jury's presence that he would "reverse the decision" and call Mrs. McCallister as the court's witness. Thereupon, as such witness, she testified at considerable length in answer to questions put by the opposing attorneys as on cross-examination. At the close of plaintiff's evidence and again at the close of all the evidence defendants moved for a directed verdict in their favor on each count of the declaration, but the court reserved its rulings on the motions. Thereupon the court gave to the jury 20 instructions, to the giving of some of which, viz., those referred to as "sections" 10, 11, 12, 13, 14 and 16, defendants' attorney objected, and, before the jury retired from the bar, he was given leave to subsequently draft and file specific objections in writing to the giving of each of said instructions or "sections" (which objections thereafter were filed and are contained in the present record). Defend-

ants' attorney also requested the giving of four other instructions to the jury, viz., those numbered 18a, 18b, 18c, and 21, but the court refused to give them.

On March 2, 1934, the jury returned a verdict in plaintiff's favor, assessing its damages at the sum of $2,770, as first above mentioned. Apparently this sum is made up of the aggregate *minimum* penalties of $10 each, as provided in the ordinance, for *each day's* violation thereof for the 277 days from December 21, 1931, to and including September 22, 1932, as charged in the several counts of the declaration. On March 2nd, also, after the verdict had been returned, defendants' motions for a directed verdict in their favor, the rulings on which had been reserved by the court, were denied.

Defendants' grounds for a new trial, as stated by them, are in substance: (a) Error by the court in refusing to dismiss the suit for want of jurisdiction in the court of the subject matter; (b) error in rulings on the admission or exclusion of evidence; (c) error in unduly restricting defendants' cross-examination of plaintiff's witnesses and of the court's witness, Mrs. McCallister; (d) prejudicial arguments of plaintiff's attorney to the jury; (e) error in giving the portions of the instructions objected to, and in refusing to give the instructions offered by defendants; (f) excessiveness of the verdict; (g) the verdict is against the manifest weight of the evidence; and (h) the evidence did not sufficiently show that defendants "permitted" the claimed violation of plaintiff's zoning ordinance to continue from day to day, so as to warrant the jury in assessing damages against defendants for each and all of the 277 days, mentioned in plaintiff's declaration.

The present record, as distinguished from statements or assumptions of opposing counsel, does not disclose the particular ground or grounds upon which

the court's order granting the new trial was based, or that the trial judge gave any reasons for its entry or rendered any opinion. The order as contained in the common law record reads: "This cause coming on to be heard upon defendants' motion heretofore entered herein for a new trial, after arguments of counsel and due deliberation by the court said motion is sustained and a new trial awarded." In the Bill of Exceptions, or "Report of Proceedings at the Trial," is the statement: "Thereupon, on March 31, 1934, all parties being represented by counsel in open court, the written motions of defendants heretofore filed herein for a new trial, and for judgment notwithstanding the verdict, came on for hearing and, after arguments of counsel, the court allowed said motion for a new trial." Then follows the statement that plaintiff, by its counsel, objected to the order, and then follows the further statement: "Which were all the proceedings had on the trial of said cause."

Among the facts appearing from the evidence are the following in substance:

Defendants, William G. and Mary E. Clark, on June 24, 1931, acquired title to the premises herein involved by warranty deed from Catherine McCallister and Arthur S. McCallister, her husband. The McCallisters acquired title in 1926. At that time the zoning ordinance of plaintiff was in force and effect, and for more than 20 years prior thereto the premises had been improved with a two-story frame dwelling, containing five rooms on the first floor and six rooms on the second floor, and the use of the dwelling conformed to the provisions of the ordinance—being a single family dwelling. In January, 1927, the McCallisters employed said William G. Clark, a resident in the village for many years and being a carpenter contractor, to make alterations in the building, and Clark made application to the village for a permit, thereafter approved by it, "to erect a Remodeling Porch."

Thereafter Clark erected the porch which was on the side of the building, and enclosed part of it for a sun parlor. He made other alterations or repairs, including the erection of "an outside stairway from the ground to the second floor," on the north side of the building and having a "landing porch." The alterations made it possible for the building to be used as a dwelling for more than a single family. After the alterations were completed Mr. McCallister made a lease of the second floor of the building to one Griffith for a period of two years from May 1, 1927, and in April, 1928, the village either caused or threatened McCallister's arrest for claimed violation of the ordinance in causing the building to be used for the housing of two families instead of one, and during May, 1928, McCallister filed a bill in the circuit court for an injunction, etc., against the village. That cause was referred to a master and such proceedings therein were had that in December, 1930, he exhibited a report, making findings in favor of the village and as to the validity of its ordinance and recommending that McCallister's bill be dismissed for want of equity. Subsequent to the filing of the report, but before decree entered, the McCallisters conveyed the premises to the Clarks. On November 19, 1931, the circuit court, following the report of the master and overruling exceptions thereto, entered a decree dismissing said bill for want of equity. Although an appeal was allowed from the decree it was not perfected.

About the time the decree was entered (November, 1931) Mrs. McCallister, although title to the premises had previously been conveyed to the Clarks, entered into a written lease with Roberts Mann, demising to him the second floor of the building for a period ending September 30, 1933, and Mann and his family took possession of the portion of the building demised and continued to occupy that portion as a family dwelling. After the conveyance to the Clarks of the title

to the premises, neither of them received any keys from the McCallisters or took possession of the premises. William G. Clark testified he never had been in the building. At the time the lease was made to Mann neither of the Clarks had any conversations or negotiations with Mann. Thereafter Mann paid rent to Mrs. McCallister, and for a time the McCallisters occupied the first floor of the building as their dwelling. On December 30, 1931, plaintiff, by its building commissioner, sent separate written notices to the Clarks, the McCallisters and the Manns, to the effect that the building was not being used in compliance with the ordinance, but was being put to a use in violation of its terms, and that unless the "illegal use" was discontinued within five days an appropriate action would be instituted to enforce such compliance. Thereafter the Clarks and the McCallisters had conferences with an attorney, and, according to their testimony, the McCallisters, with their children, in January, 1932, went to live in a small apartment over a certain store in the village. After about two months they continued to sleep in said apartment, or in quarters elsewhere, but they cooked their noon-day meals on the first floor of the dwelling house in question and attended to the keeping up of the furnace fire. They paid no rent for this occupancy to the Clarks, nor were any payments for rent demanded of them by the Clarks, but Mrs. McCallister collected rents from the Manns, which she did not turn over to the Clarks. William G. Clark testified in substance that during the period from December 21, 1931, to September 23, 1932 (when the present action was commenced) Mrs. McCallister, under his verbal agreement with her, was collecting the rents from the Manns and taking care of the property and the furnace, for the privilege of "storing her furniture" on the first floor of the building, and that subsequently he had Mrs. McCallister "indicted for rents she had received from Mr. Mann."

The evidence further disclosed in substance that the Manns, after the expiration of their lease to the second floor of the building on September 30, 1933, left the premises; that the McCallisters then moved back into the building and occupied the same as their dwelling; that the Clarks had commenced a suit or suits against them for the possession of the premises; and that at the time of the trial (March, 1934) the Clarks claimed still to be the owners of the premises.

In plaintiff's printed petition for leave to appeal from the order granting the new trial, its counsel make five contentions. The main contention in substance is (1) that the court did not err in following Judge Trude's prior ruling, made upon defendants' preliminary motion to dismiss the suit, that the circuit court of Cook county had jurisdiction of the subject matter. The four other contentions relate to certain procedural errors, claimed in defendants' written motion for a new trial to have occurred on the trial and to have warranted the action of the court. These contentions are in substance: (2) That none of the court's rulings, in admitting or excluding evidence or made upon objections of either counsel as to any matter or thing occurring on the trial, was so prejudicial to defendants as to warrant the court's action; (3) that no such error was committed in the giving or refusing to give any instruction or instructions as warranted the court's action; (4) that it was proper under all the circumstances shown for the court to call Mrs. McCallister as the court's witness; and (5) that the evidence so clearly established defendants' daily and continued violations of the zoning ordinance in question, as charged in each count of the declaration, that "reasonable minds could come to no other conclusion than that reached by the jury," and this Appellate Court will here enter the judgment which the trial court should have entered upon the verdict. In defendants' answering brief, their counsel limited himself wholly

to a reply to plaintiff's counsels' first contention, concerning the question whether or not the circuit court had jurisdiction to try the present cause as disclosed from the pleadings, and stated in substance that if he was right in his contention (that the court did not have such jurisdiction), it would be a waste of time for him in a brief to discuss, or this court to read, his contentions relating to the claimed procedural errors occurring at the trial; and counsel further stated that if the petition for leave to appeal was allowed, he would in an additional brief to be filed (which was filed after the allowance of this appeal) discuss said procedural errors. And as to defendants' theory concerning the instant question as to the circuit court's jurisdiction, counsel further stated:

"It is defendants' contention . . . that, under the decision of *People v. Feinberg* (opinion filed in May, 1932) 348 Ill. 549, overruling *Berkovitz v. Lester,* 121 Ill. 99 (decided in 1887), the circuit court of Cook county, under the Constitution of Illinois, has no jurisdiction of a case *quasi-criminal* in nature arising in Cook county. Defendants further contend that an action to recover a fine or penalty under an ordinance, although civil in form, is *quasi-criminal* in nature, whether it is commenced by the issuance of a warrant for the arrest of the defendants or by the issuance of a summons, and that the nature of a cause of action is determinable from the relief sought and the declaration containing the charges made, instead of from the method of acquiring jurisdiction of the defendants' persons. Defendants *conceded* in the trial court, and concede here, that an *action of debt* for the enforcement of an ordinance is *not* a criminal prosecution. It is *civil in its form,* and whenever the question has been raised, whether the action is civil or criminal, it has been decided to be a *civil* action. *However,* whenever the question has been raised, whether an action of debt for the enforcement of an ordinance is

*quasi-criminal* in nature although civil in form, the decision in every instance, except one (*People v. Milwaukee Dairy Co.,* 244 Ill. App. 341, 345, which was *based upon a misapprehension of the holding* of the Supreme Court in *People v. Gartenstein,* 248 Ill. 546) has been that the action is *quasi-criminal."*

In the cited *Gartenstein* case it appears from the opinion (p. 549) that an *action of debt* was begun in the municipal court of Chicago by the People, for the use of the State Board of Health, against Gartenstein, to recover the *statutory penalty* of $100 for practicing medicine without a license; that after the defendant had been served with summons and had appeared and waived a trial by jury, the court heard evidence and found that the defendant was indebted to the plaintiff in the sum of $100, as such penalty, and rendered judgment for the amount, etc.; that the statute upon which the action was based provided that "a person practicing medicine without a license shall forfeit and pay to the People of the State of Illinois, for the use of the State Board of Health, the sum of $100 for the first offense and $200 for each subsequent offense, to be recovered in an action of debt before any court of competent jurisdiction"; that after said judgment was rendered against Gartenstein he prayed an appeal to the criminal court of Cook county, which the municipal court refused to grant; and that he afterward sued out a writ of error from the Supreme Court to review the judgment, which subsequently was affirmed. One of the contentions of counsel, as a ground for a reversal of the judgment, was that there had not been a compliance with the provisions of section 33 of article 6 of the Illinois constitution, wherein it is provided that "all prosecutions shall be carried on: In the name and by the authority of the People of the State of Illinois, and conclude: Against the peace and dignity of the same." And counsel argued that the suit "was a *prosecution,* and that the judgment must be reversed

for a failure to obey the constitutional mandate.''
In deciding this contention adversely to Gartenstein,
the court reviewed a number of its prior decisions,
and said in part (pp. 550–552, italics ours):

''Counsel for plaintiff in error is correct in his posi-
tion that if the suit was a prosecution the court could
not dispense with words which are essential in all
prosecutions and advantage of their omission can be
taken on motion in arrest or on error. (*Hay v. Peo-
ple,* 59 Ill. 94.) The action of debt, however, was not
a prosecution. The meaning of the word 'prosecu-
tions' was judicially determined by this court in *Don-
nelly v. People,* 11 Ill. 552, where the court said: 'In
its broadest sense the word ''prosecutions'' would
embrace all proceedings in the courts of justice, or
even elsewhere, for the protection or enforcement of
a right or the punishment of a wrong, whether of a
public or private character. The word, as here used,
however, has not that comprehensive meaning, but
signifies prosecutions of a public or criminal charac-
ter. When used in this sense it means the mode of the
formal accusation of offenders, and this may be by
presentment, information or indictment.' . . . The
suit in this case was neither criminal in form nor sub-
stance. It was not a crime at common law to practice
medicine without a license, and the statute does not
make it a crime. Where an offense is created by stat-
ute and *a penalty* is fixed for its commission, which is
to be recovered *by an action of debt* and *not by prose-
cution,* the action *is civil* and *the rules of criminal
pleading and procedure do not apply to it.* To prac-
tice medicine without a license is no more a crime,
either in its nature or by the statute, than to peddle
without a license, and in *Webster v. People,* 14 Ill. 365,
where the action was to recover a penalty for peddling
without a license, it was held that the suit was not
criminal, either in form or substance; that the act was

not an offense at the common law nor indictable under the statute; that it was not necessary to prove guilt beyond a reasonable doubt, and that either party might appeal. The case of *Town of Lewiston v. Proctor,* 27 Ill. 414, was an action to recover a penalty for obstructing a village street, and it was held that the rule in criminal prosecutions requiring the jury to be satisfied of the defendant's guilt beyond a reasonable doubt did not apply, and the same doctrine has been repeated in other cases. In *Town of Partridge v. Snyder,* 78 Ill. 519, the proceeding was to recover a penalty for obstructing a road, and it was held to be a *civil* action and not criminal *nor of a criminal nature,* and that either party might appeal. In a suit before a justice of the peace to recover a fine imposed by statute upon school officers for malfeasance in office it was held that the information need not be in writing nor in the name of the People. (*Newton v. People,* 72 Ill. 507.) The decision could *only* rest upon the ground that the suit *was not a prosecution,* since the fact that the statute does not provide for written pleadings in a justice's court would not authorize a justice of the peace to dispense with a constitutional requirement. The fact that the amount recovered was called a fine did not determine the nature of the action, but the real essence of the thing was that the amount recovered was a penalty. The same rule applies here, and the fact that the defendant may be committed to jail as a method of collecting the debt does not fix the character of the suit as a prosecution.''

The holdings in the *Gartenstein* case are cited with approval in the subsequent cases of *People v. Drainage Com'rs,* 282 Ill. 514, 517; *State v. Froelich,* 316 Ill. 77, 83; and *People v. Milwaukee Dairy Co.,* 244 Ill. App. 341, 343, 344. Defendants' counsel, as to his contention of want of jurisdiction of the circuit court to try and determine the present action, place consider-

able reliance on the *Feinberg* case (348 Ill. 549). He argues in substance that that case in effect overrules the holdings in the *Gartenstein* case, as well as those in the numerous prior cases of the Supreme Court cited therein, but, as we read the opinion in the *Feinberg* case, we do not think that there is any basis for the argument. That was a *mandamus* case, wherein the Supreme Court held in substance that, under the provisions of section 26 of article 6 of the constitution of Illinois, the judges of the circuit and superior courts of Cook county who are assigned to act as judges of the criminal court of Cook county have exclusive jurisdiction in all cases of *criminal* and *quasi-criminal* nature; that where a judge of the circuit court of Cook county *not so assigned* attempts to call a special grand jury and assume jurisdiction of its proceedings his orders in connection therewith *are void* and may be wholly disregarded; but that *mandamus* will not lie to compel said judge to expunge his orders, as he has no more jurisdiction to expunge the orders than he has to make them. And we are of the opinion that under the allegations in plaintiff's declaration in the present case, the circuit court of Cook county clearly has jurisdiction of the subject matter of the cause. It is a civil action of debt brought to recover penalties prescribed for claimed violations by defendants of plaintiff's zoning ordinance. And we are further of the opinion that the trial court did not err in refusing to dismiss the suit upon defendants' motions.

As to plaintiff's contention that the trial court erred in entering the order of March 31, 1934, granting a new trial, we have reached the conclusion, after reviewing the briefs and the lengthy printed arguments of opposing counsel and carefully considering all the evidence (some of which was conflicting), and the amount of verdict, that the trial judge did not abuse

the discretion vested in him in entering said order. No useful purpose will be served in here discussing the arguments of opposing counsel bearing upon that ultimate question. In 4 Corpus Juris, pp. 830–832, sec. 2813, it is said: "It is generally held that motions for a new trial are addressed to the discretion of the trial court and are not reviewable unless the record shows a *clear abuse* of such discretion, especially where such motions were based on questions of fact arising on the trial, or on matters which occurred in the presence of the court during the trial, . . . Appellate courts have encouraged trial courts in exercising this discretion to prevent a miscarriage of right and are reluctant to interfere unless the discretion has been exercised capriciously, arbitrarily or improvidently. Even greater latitude is allowed the trial court in granting than in refusing new trials, and the appellate court will interfere more reluctantly where the new trial is granted than where it is denied, since in such cases the rights of the parties are not finally settled as they are. where the new trial is refused." The writer further states (pp. 833, 834; sec. 2816): "The action of the trial court in granting or denying a motion for new trial based on the alleged insufficiency of the evidence to sustain the verdict is within the discretion of the court and is not subject to review except where there has been an abuse of discretion, and this fact *clearly appears*. This principle is especially applicable in case of an appreciable or substantial conflict in the evidence. . . . Where a new trial is *granted* on the ground of insufficiency of evidence, a stronger case is required to secure a reversal than where it has been denied; and the action of the trial court in *granting* a new trial will not be disturbed unless the evidence *palpably supports* the verdict, . . ." We are unable to say that the present record discloses that the trial court was guilty of a "clear

abuse" of discretion in entering the order, granting the new trial, or that the evidence "palpably supports" the verdict.

The order of March 31, 1934, appealed from, granting a new trial to defendants, should be affirmed and it is so ordered.

*Affirmed.*

SCANLAN and SULLIVAN, JJ., concur.