**People of the State of Illinois, Defendant in Error, v. William L. Dickelman, Plaintiff in Error.**

**Gen. No. 40,874.**

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed April 10, 1940.

LAURENCE B. JACOBS and MARCELLUS W. MEEK, both of Chicago, for plaintiff in error; JOHN MARSHALL DAHLBERG, of Chicago, of counsel.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; NATHAN KINNALLY and JOHN J. PHILLIPS, Assistant State's Attorneys, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On November 18, 1937, the State's Attorney filed a three-count criminal information in the county court of Cook county against William L. Dickelman, Neil N. McLean, William F. Rapelje, Jesse W. Ritter, Scott R. Weinland and Edward B. Keelen. The first court charges that defendants, as issuers, officers, directors, trustees or agents of the Westcoast Minerals Co., Ltd., a trust estate, did unlawfully sell securities without complying with par. 3, sec. 7a; sec. 7; sec. 6b; par. 2, sec. 7a, and sec. 9 of the Illinois Securities Law (ch. 121½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 13.10, 13.09, 13.08, 13.12]), said securities consisting of one instrument purporting to be expectancy equities in the Westcoast Minerals Co., Ltd., a trust estate, which securities were not exempt from compliance with the Illinois Securities Law as a condition precedent to the sale thereof. The second count is the same as count 1, except that it charges that the defendants "did then and there aid and assist" the trust estate in the unlawful sale of securities, and "did then and there being chargeable as principals did then and there unlawfully sell to Frank J. Zavadil and Emilie Zavadil the securities aforesaid." The third count is the same as the second count, except that it charges that the defendants "did then and there unlawfully sell to Frank J. Zavadil and Emilie F. Zavadil, and did then and there sell to divers other persons, whose names at the present time are unknown." The only defendants apprehended were William L. Dickelman, Scott R. Weinland and Jesse W. Ritter. Before trial, the cause was *nolle prossed* as to the defendant Jesse W. Ritter. The defendants, William L. Dickelman and Scott R. Weinland entered pleas of not guilty, and went to trial

before a jury, which found them guilty as charged in the information. The court overruled their motions for a new trial and in arrest of judgment, entered judgment on the verdict, and sentenced each to pay a fine of $500 and to serve a term of 90 days in the common jail of Cook county. Defendant William L. Dickelman is prosecuting this writ of error for the purpose of reversing the judgment.

The first criticism leveled at the judgment is that the county court of Cook county has no criminal jurisdiction. He calls attention to the provisions of sec. 2 of Division X of the Criminal Code (sec. 701, ch. 38, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 37.676]) which reads: "The Criminal Court of Cook County shall have exclusive original jurisdiction of all criminal offenses in the County of Cook, except such as is conferred upon justices of the peace, and appellate jurisdiction from justices of the peace." No case has been called to our attention, nor have we been able to find any, in which either the Appellate or Supreme Courts have passed on this point. Questions relative to the jurisdiction of the criminal and circuit courts of Cook county and the municipal court of Chicago have been passed upon by our Supreme Court. The case of *People v. Feinberg,* 348 Ill. 549, involved a consideration of the jurisdiction of the criminal court of Cook county and the right of a judge of the circuit court who was not assigned to sit as a judge of the criminal court of that county to impanel a grand jury. The opinion in that case holds that a judge of the circuit court who is not regularly assigned to sit as a judge of the criminal court cannot enter orders in the latter court, and that such orders, when so entered, are void, and should be expunged. The Constitution of 1818 provides that the judicial power of the State shall be vested in one Supreme Court and in such inferior courts as the general assembly may from time to time ordain or establish. The county court is not

specifically mentioned in that constitution. The Constitution of 1848 provides that the judicial power shall be vested in one Supreme Court, in circuit courts, in county courts and in justices of the peace. That constitution also authorizes the legislature to establish inferior local courts of civil and criminal jurisdiction in cities, which courts "shall have a uniform organization and jurisdiction in such cities." The Constitution of 1848 also declared that "there shall be in each county a court, to be called a county court," and that the jurisdiction of said court "shall extend to all probate and such other jurisdiction as the general assembly may confer in civil cases, and such criminal cases as may be prescribed by law, where the punishment is by fine only, not exceeding $100." The present constitution, adopted in 1870, provides that the circuit courts shall have original jurisdiction of all causes in law and equity, and such appellate jurisdiction as may be provided by law. It also provides that there shall be elected in and for each county, one county judge; that county courts shall be courts of record and shall have original jurisdiction "in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlements of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law." Hence, the constitution confers on the legislature a broad grant of power with respect to the jurisdiction of county courts. However, the jurisdiction which the legislature is permitted to grant to the county court, in addition to the specific jurisdiction directly given to that court in the Constitution, must be provided for by general law applicable to all county courts. In the case of *Myers v. People,* 67 Ill. 503, the validity of an act conferring jurisdiction on county courts was attacked. A section of the act provided that it should not apply "to counties having, by

the last state or federal census, 100,000 population.''
The Supreme Court pointed out that the act attempted
to exclude Cook county from its provisions, and held
that in attempting so to do, it violated the Constitu-
tion. Nevertheless, the act was sustained except as to
the portion criticized. Section 26 of Article VI of the
Constitution of 1870 provides that the recorder's court
of the city of Chicago shall be continued, and shall be
called the criminal court of Cook county, and that the
criminal court shall have jurisdiction of a circuit court,
in all cases of criminal and quasi-criminal nature aris-
ing in the county of Cook, or that may be brought be-
fore said court pursuant to law. Section 177, ch. 37,
Ill. Rev. Stat. 1939 (sec. 7 of the County Court Act
[Jones Ill. Stats. Ann. 36.163]) provides that the
county courts shall have concurrent jurisdiction with
the circuit courts in all criminal offenses and misde-
meanors where the punishment is not imprisonment
in the penitentiary or death. As pointed out in the
*Myers* case, the legislature, in granting jurisdiction to
the county court, was required to do so by general law
applying to all county courts in the State. Section 177
has been amended from time to time. The last time it
was amended was in 1939. Section 2 of Division X of
the Criminal Code, while providing that the criminal
court of Cook county shall have exclusive original ju-
risdiction of all criminal offenses in the county of
Cook, must be read in connection with section 7 of the
County Court Act. Both of the acts were adopted at
about the same time, and they complement one an-
other. A consideration of the history of the circuit
and county courts, the legislative enactments, and a
study of the reported decisions, convinces us that the
legislature did not intend to deprive the county court
of Cook county of jurisdiction in criminal offenses and
misdemeanors where the punishment is not imprison-
ment in the penitentiary or death, and at the same time
to give such jurisdiction to all other county courts in

Illinois. The adoption of the contrary view would not harmonize with the ruling in the *Myers* case. A reasonable view is that the section providing that the criminal court of Cook county shall have exclusive original jurisdiction in all criminal offenses in the county of Cook, was adopted by the legislature to prevent a conflict between the criminal court of Cook county and the circuit and superior courts of Cook county concerning jurisdiction in criminal cases. Therefore, we are of the opinion that the county court of Cook county had jurisdiction of the subject matter in the instant case.

The second assignment of error is that the court should have sustained defendant's challenge to the array of jurors. He asserts that prior to the *voir dire* examination of the veniremen, he interposed a challenge to the array on the ground that the court had not issued a venire for not less than twelve nor more than twenty-four competent jurors, and that the jurors were not summoned to the county court, but, in fact, were borrowed jurors who were summoned for service in the circuit court or superior court. We have carefully examined the record, and find that the defendant was tried with his codefendant, Scott R. Weinland. The latter filed a written challenge to the array, and the State's Attorney invited him to offer proof in support of his challenge. No proof was offered and the court overruled Weinland's motion. The agreed statement of facts shows that counsel for the State and the defendant Weinland thereupon proceeded with the *voir dire* examination, and that the jurors were passed upon and accepted by the State and defense in panels of four. The court thereupon inquired if the jury were acceptable to the State and the defense, and no objection being made, the case proceeded to trial. At this point, the record discloses the following:

"Mr. McCaffrey: [Attorney for defendant Dickelman] May I make an objection on the part of Dickelman to the array of jurors?

"The Court: Both sides have accepted this jury. The motion comes too late.

"Mr. Kinnally: [Assistant State's Attorney] At the time of the motion, there was no proof offered on the challenge that he raised." It is apparent that defendant Dickelman's motion was made after both sides had completed the *voir dire* examination and had accepted the jury. In *Gropp v. People,* 67 Ill. 154, and *Mueller v. Rebhan,* 94 Ill. 142, it was held that an objection to the array is waived unless made before any individual jurors have been selected and called as jurors. In *People v. Flannigan,* 204 Ill. App. 548, 550, the court said:

"To have preserved the question for review, the challenge should have been made when the jury were called into the box and before the examination of the jurors on their *voir dire* had been entered upon." Under the circumstances disclosed by the record, we are of the opinion that the defendant Dickelman waived his right to challenge the array.

The third point urged by defendant is that the court erred in overruling his motion to strike the testimony of witnesses called by the People for the purpose of showing that the sale of securities was not an isolated sale. Defendant maintains that the effect of such testimony was to divert the attention of the jury from the offense charged and to establish his guilt by showing he committed separate and distinct offenses. Evidence of sales to four other persons was admitted. Testimony of this character is admissible for the purpose of showing that the sale charged in the information was not of such kind as to make the securities fall within Class B of the Securities Act. Securities falling within the designation of Class B are known as exempted

sales. The testimony was also admissible for the purpose of showing the defendant's relationship to the issuer of the securities. (*People v. Love,* 310 Ill. 558; *People v. Baldwin,* 278 Ill. App. 327.)

The fourth point which defendant urges is that the court erred in overruling his motions for a directed verdict and in arrest of judgment. Under this point he first argues that the State failed to prove sales to "divers other persons whose names at the present time are unknown," as charged in the third count of the information. It is well established that conviction on a general verdict will be sustained although some of the counts are faulty, if there be one good count in the indictment or information. (*People v. Limeberry,* 298 Ill. 355; *People v. Matlock,* 303 Ill. 399; *People v. Munday,* 204 Ill. App. 24.) The evidence establishes that Dickelman sold $67,000 worth of preorganization subscriptions to the securities of the Westcoast Minerals Co., Ltd.; that he never made any entries on the books of the trust showing these sales and never felt called upon to account for the funds, and that the sale of the subscriptions was a fraud. There was ample evidence to warrant the verdict of the jury as to all three counts. Under the fourth point defendant argues that the court erred in denying his motion to require the State to elect on which count the case was based. The crime charged was a misdemeanor, and the ruling on the motion was within the reasonable discretion of the trial judge. Defendant does not point out how he was prejudiced by the ruling. We are of the opinion that the court did not abuse his discretion. (*Johnson v. People,* 124 Ill. App. 213; *People v. Bischoff,* 238 Ill. App. 369; *People v. Jacobson,* 247 Ill. 394.)

Finally, defendant maintains that the State failed to prove that the securities sold to the Zavadils were issued to them by the Westcoast Minerals Co., Ltd., and were not personally owned securities of the defendant Dickelman, exempt under Class B of the Illinois Secu-

rities Act (sec. 100, ch. 121½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 13.05]). We assume that he alludes to the language which states that securities shall be considered in the exempted class if they constitute "the sale in good faith and with no intent to defraud, of any security by or on behalf of a vendor who is not an insurer, . . ." The jury (by general verdict) found defendant to be an issuer of the securities as charged in the first count of the information. An examination of the transcript convinces us that there is ample evidence showing Dickelman to be an issuer within the meaning of the statute. The record shows that the sale alleged in the information was of the type within the inhibition of the Illinois Securities Act. It is plain that the defendant was engaged in a scheme to swindle honest citizens out of their hard earned savings.

For the reasons stated, the judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*

HEBEL, J., and DENIS E. SULLIVAN, P. J., concur.