(No. 14437.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PARIS MATLOCK, Plaintiff in Error.

*Opinion filed June 21, 1922.*

1. CRIMINAL LAW—*when misconduct of juror is not ground for new trial.* Although the court at the beginning of the trial has ordered that the jury remain together, the separation of one juror from the others during the noon hour because of his misapprehension as to what the court's order was in that regard is not sufficient ground for granting a new trial, where there is no showing that the defendant was prejudiced thereby.

2. SAME—*when error in instruction will not work a reversal.* If it can be said from the record that an error complained of in an instruction could not reasonably have affected the result of the trial the judgment will not be reversed for such error.

3. SAME—*new trial will not be granted to secure cumulative evidence.* A new trial will not be granted upon the ground of newly discovered evidence where the affidavits of the new witnesses show that their testimony will be merely cumulative and not decisive of the issues.

4. SAME—*defendant must use diligence to secure a desired witness at the trial.* A defendant who fails to use diligence to secure the attendance and testimony of a certain witness at the trial and makes no motion for a continuance because of his absence is not entitled to a new trial to produce such witness, particularly where the proposed testimony, as shown by his affidavit, is in the nature of impeaching testimony, only, and is denied by counter-affidavit.

WRIT OF ERROR to the Circuit Court of Jasper county; the Hon. FRANKLIN R. DOVE, Judge, presiding.

DAVIDSON & FITHIAN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, WILLIAM E. ISLEY, State's Attorney, and FLOYD E. BRITTON, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

At the October term, 1919, of the Jasper county circuit court Paris Matlock was indicted by the grand jury for unlawfully obstructing a certain public highway in said county

and also for disorderly and boisterous conduct. He was convicted upon both charges and fined by the county court, the indictment having been certified to the county court for trial. The indictment charged that he unlawfully and willfully obstructed and unnecessarily hindered Josiah Matlock and Prosper Matlock, while lawfully driving and traveling upon said highway, "by then and there in the night time of said day unlawfully and willfully and unnecessarily driving and stopping his automobile upon the left-hand side of said highway in front of the team and vehicle of the said Josiah Matlock, and by then and there unlawfully and maliciously standing in said highway and threatening the said Josiah Matlock with bodily injury unless he then and there turned to the left," etc.

The testimony disclosed that the public highway in question runs north and south. Near the point where the parties met the road formerly for a quarter of a mile curved to the east of the north and south section line, and in about 1916 the road authorities straightened the road at this point and put it on the north and south line and prepared the new or changed part of the road for travel. In October, 1919, at the time Paris and Josiah Matlock met on the road, both the old and the new parts of this road were traveled. The two parties met near the half-way distance between the points where the old road leaves or varies from the new road and returns to it, and the two roads at this half-way point are not very many feet apart. Paris at the time in question was traveling south on the old road, and gave as his reason that the new road had some stumps in it that made it bad traveling for his automobile. He had with him in his automobile a lady by the name of Frances Rife, who never appeared as a witness in either of the trials herein referred to. Josiah and his son, Prosper, were traveling north on the old road-bed at the time in question. Prosper was about one hundred yards in advance of his father and was walking, leading a cow, and his father was following

in a wagon loaded with wood and drawn by two horses, and he had a third horse abreast of the other two horses. Paris had passed Prosper, according to the claim of the People, while driving his automobile on the east side of the highway and continued south on the east side of the highway until about sixty feet north of Josiah, when he stopped his automobile on the east side of the highway, thereby leaving no sufficient room for Josiah to pass the automobile on the right-hand side (or east side) of the road as he traveled north. Josiah had also stopped his wagon and horses, and while Paris and he were thus standing in the road, about sixty feet apart, Prosper shouted to his father not to give the highway or all of the highway, and promptly after this shouting Paris began cursing Prosper and using vile language, and according to the claim of Prosper and his father, Paris also compelled Josiah to pull his team to the left and cross a ditch about sixteen inches deep or more, on the west side of the road-bed, into the new highway already described, for want of sufficient room to pass the automobile on either side of the old road. On the trial of the cause in the county court Prosper and his father testified that Paris obstructed the passage of Josiah willfully by simply stopping slightly on the east side of the old road so as to prevent him from passing otherwise than by crossing the ditch as aforesaid, and there were other witnesses who corroborated them in this evidence. Paris, on the other hand, testified positively in the county court that he stopped his automobile sixty feet north of Josiah and his team and on the west side of the road and as far west as he could get his machine, leaving plenty of room for Josiah to pass him on the east, and that Josiah did pass him on the east and continued north on the old road. He admitted cursing and abusing Prosper after Prosper had shouted to his father not to give any of the road, but also testified that he told Josiah to come on,—that there was plenty of room for him to pass on the east,—and that Josiah did pass him on the

303—26

east side. The sole issue or question in that case on the facts was as to whether or not Paris stopped his machine on the west side of the road and allowed Josiah to pass him on the east, as he testified, or whether or not he stopped it just to the east edge of it, so as to block the passage of the wagon and force Josiah to cross the ditch into the new road.

After the trial in the county court was over, and at the April term, 1920, of the circuit court of said county, the grand jury returned an indictment for perjury against Paris Matlock, consisting of two counts. This indictment was based on the alleged false testimony of Paris in the trial of the case in the county court. The charge in both counts of the indictment is substantially the same, and after the usual averments in such indictments both counts make the direct charge, in substance, that Paris Matlock in the cause in the county court "did depose and swear  *  *  *  that he, the said Paris Matlock, did not obstruct the said Josiah Matlock upon said public highway, but did seasonably and properly turn to the right far enough to permit the said Josiah to pass his, the said Paris Matlock's, automobile on his, the said Paris Matlock's, left, unobstructed, and that he, the said Josiah Matlock, did then and there so pass with his team and wagon at the time and place alleged in the indictment." On the trial before a jury the plaintiff in error (hereinafter referred to as the defendant) was found guilty and judgment and sentence were entered against him by the circuit court that he serve an indeterminate term in the penitentiary, and he has sued out this writ of error to review the judgment of the circuit court.

The issues of fact in the circuit court were plain and simple and were the following: (1) Did the defendant swear on the trial in the county court that he did seasonably and properly turn to the right far enough to permit Josiah Matlock to pass his automobile at the time in question unobstructed, and that Josiah did then and there so pass

with his team and wagon on the defendant's left, or did he swear to those facts in substance? (2) Did he swear to those facts willfully and corruptly, knowing at the same time that he was testifying falsely and corruptly and with intent to secure a verdict of not guilty that he was not justly and legally entitled to have?

There is no question made by the defendant that he did not testify to the foregoing state of facts in the county court. His only claim is that the facts to which he testified are true, and that for that reason he is not guilty of the charge of perjury. He testified to the same state of facts in the circuit court and which are above set forth, and in substantially the same manner as he did in the county court, as we have already set forth. The only real issue, therefore, in this case is whether or not his testimony aforesaid was true or false, for if his testimony was untrue it is morally certain that he positively knew that he was testifying falsely and corruptly when he gave such testimony. Prosper and Josiah Matlock testified in the circuit court as to what occurred at the time they met the defendant on the road, to the same effect as we have already indicated that they testified to in the county court, and their testimony as to the foregoing issues is diametrically contrary to the testimony of the defendant. It will serve no useful purpose to detail the evidence of these three witnesses any further than we have. It is proper to state that the defendant is a cousin of Prosper and a nephew of Josiah, and all three and their families are not on very friendly terms and do not associate or visit with each other.

The questions of fact in this case having been settled by the lower court and the jury, there is absolutely no reason for this court, so far as the record shows, to set aside the verdict and judgment in this case on the evidence after a careful and critical consideration of the testimony of the three Matlocks.

There is a further reason why this court should not interfere with the verdict and judgment in the case upon the consideration of the evidence alone. Prosper and Josiah Matlock were corroborated by the mother of Prosper and also by other witnesses. Mrs. Matlock testified, in substance, that she visited the place where the defendant stopped his machine when he met the two Matlocks and that she examined the roadway there and tracked the automobile of the defendant home. She also testified that she saw the tracks of the wagon at the place where it turned out to the west and across the ditch and that it was going north; that the automobile stopped on the east side of the road, with the wagon and horses directly in front of it, and there was just room for the horses to turn around and cross the ditch, and that there were obstructions on both sides of the automobile that would prevent the wagon and team from passing it on either side of the old road. Clarence Bryan, another witness for the People, testified that he examined the road the next morning at the point in question, and that the wagon tracks at that point "went on the west side,—it pulled out to the west." He did not know how long it had been after the tracks were made and did not notice what direction the wagon and horses were going, but it appears from the testimony of Mrs. Matlock that he went to the point in question with her the next morning after the event in question and that they got there about daylight. Another witness for the People, Levy Langley, testified that he went down to the place where Paris and Josiah passed each other, and that "the fellow on the wagon had passed out to the west on the west side of the road, across the ditch; he was going north;" and that he observed the tracks of the automobile and that it was traveling south. He did not observe whether there were any tracks passing on the east side of the automobile. There were four or five witnesses who testified in behalf of the defendant who were acquainted with the place on the road in question, some of

whom had visited the place at the instance of the defendant, who pointed out to them the place of meeting of himself and the two Matlocks. It does not definitely appear when these witnesses visited this place after the event in question. They described the road and the ditch that Josiah said he crossed in turning out west of the old road, and their description of the road and the ditch is in no way materially different from that of the witnesses for the People. They described the road as very narrow at that point, and some of the witnesses testified that there would have been plenty of room for the wagon to have passed on the east side of the defendant's machine through a field that was there and which was in cultivation. It does not definitely appear whether they are describing the exact place of the meeting of the Matlocks, and it does not definitely appear that they were there soon enough after the difficulty to see the wagon tracks, and they do not testify with reference to them.

Defendant makes the claim that the indictment is insufficient to sustain the conviction. The objections are directed mainly, if not solely, to the first count, which is faulty in several particulars, but if we concede that it is fatally defective on the motion in arrest of judgment, as argued by defendant's counsel, the objections do not apply to the second count. The second count of the indictment is sufficient to support the judgment of conviction, and therefore there is no sufficient reason given why the verdict and judgment should not be sustained.

It is also argued that the judgment ought to have been set aside by the court because one of the jurors separated from the panel at one of the noon hours, just after the jury was selected, after the court had made the order that the jury should be kept together and not allowed to separate. The record clearly reveals the fact that the juror was only absent from the panel about fifteen minutes and was found by the sheriff in a restaurant eating his lunch. This

occurred just after the jury had been impaneled, and it was clearly shown by affidavits that the juror separated from the jury under a misapprehension as to what the court's order was in that regard, and that he had talked to no one about the case and that no one talked to him about it. The defendant was not prejudiced thereby, and this is not sufficient ground for granting a new trial. *People* v. *Strause,* 290 Ill. 259; *Reins* v. *People,* 30 id. 256.

The fifth instruction given on behalf of the People closed with this direction: "It is sufficient to convict the defendant if it appears from the evidence beyond a reasonable doubt by the testimony of two witnesses or from the testimony of one witness and such corroborative circumstances as in your opinion is equivalent to the testimony of two witnesses, that the defendant did willfully and corruptly testify falsely as to some material matter in the judicial proceedings as alleged in the indictment." The objection to this instruction is that it fails to state that the testimony must relate to some material matter in issue or point in question, as required by the statute, and the objection is well founded. The first part of this instruction is in this language: "Before you can convict the defendant of willful and corrupt perjury as charged in the indictment, you must believe from the evidence that the defendant in the judicial proceedings alleged in the indictment after being duly sworn to tell the truth, did willfully and corruptly testify falsely to a matter material to the issues there involved, in manner and form as alleged in the indictment." The first instruction given for the People also, in substance, instructed the jury that to constitute perjury in this case it must be shown that the defendant swore willfully, corruptly and falsely in a matter material to the issues or point in question and after having taken a lawful oath in a judicial proceeding, etc. The testimony given by the defendant in the case in the county court and which was charged by this indictment and proved to have been false and known to be

false by the defendant, was, beyond all question, material
to the issues then being tried in the county court. There
is absolutely no dispute that the defendant swore in the
county court to the very state of facts the testifying to
which is charged by the indictment in this case to be per-
jury. Instructions similar to the one objected to by the
defendant have been held by this court in other cases to be
reversible error. In this case it is not perceivable how the
defendant could have been prejudiced by the giving of the
instruction in question when it is admitted that he did tes-
tify in the county court as charged and the testimony must
be considered by everyone to have been material to the is-
sue, and where the only real question in the case is whether
or not the facts sworn to by the defendant in the county
court were true or false. Where it can be said from the
record that an error complained of cannot reasonably have
affected the result of the trial the judgment of the trial court
must be affirmed. *People* v. *Haensel,* 293 Ill. 33.

It is also assigned as error that the court erred in over-
ruling the motion for a new trial on the ground of newly
discovered evidence. The defendant made an affidavit in
support of his motion for a new trial that he had discov-
ered two witnesses, (naming them,) one of whom would
testify that he passed along or by the place on the road in
question the next day after the difficulty and saw tracks
of a wagon on both sides of the highway at that point;
that the other witness would testify to the same state of
facts as the witness just referred to, and also that there
were tracks that appeared to be made by a big wagon on
both sides of the road, and that he noted that the tracks on
the east side of the highway showed the horses were trav-
eling north and that the tracks of the horses indicated that
the wagon on the west was traveling south. The two
newly discovered witnesses also made affidavit that they
would both testify, in substance, as stated by the defendant.

The affidavits of these newly discovered witnesses are merely cumulative evidence and not decisive of the issues. A new trial should not have been granted upon the testimony of those two witnesses.

Aaron Rife also made affidavit for the defendant that shortly after the trial in the county court he had a conversation with Prosper Matlock concerning the trial, and that Prosper laughed much over the result and stated that that was one time Paris had it put over him; that Paris had told it just as it was and then got stuck; that Josiah had driven around Paris on the east side as he went north, and that they had cursed each other, and that he had decided to get even with Paris; that upon their return south down the road they had driven on the west side of the road in question. The witness Rife had been subpœnaed by the defendant to testify as a witness in this case. It is claimed by the defendant that he did not know what Rife knew until after the trial; that Rife told him that he would tell what he knew on the witness stand and not before, and that Rife disappeared and failed to appear and testify as a witness. There was no continuance asked on account of the absence of this witness. It does not appear that the defendant asked the court to call Rife as its witness after showing that Rife refused to tell defendant in advance what he knew, which was his right had he sought to invoke it. The defendant has not, therefore, used due diligence in ascertaining what this witness knew and having him testify on the trial. The testimony of Rife is rather remarkable and his delay in coming to his friend's relief tends to cast suspicion upon his testimony. It appears from the record that he is a brother-in-law of defendant, as shown by counter-affidavit, and there is absolutely no reason shown by the record, other than as already stated, why Rife should not have disclosed his evidence before the trial in the circuit court. His evidence is only in the nature of impeaching testimony and is vigorously denied in every particular

by Prosper Matlock in his counter-affidavit.   It was not proper to consider the counter-affidavit, as the trial court indicated, but the defendant is not entitled to a new trial on account of the testimony of this witness, for want of due diligence in obtaining it earlier.

The defendant made an affidavit concerning the juror John Leturno, who separated for fifteen minutes from the other jurors.   The defendant swears, as already indicated, that Leturno was absent nearly fifteen minutes; that at the close of the evidence and just before the reading of the instructions to the jury a recess of five minutes was ordered by the court and the jury were taken to the toilet room in the court house; that while in the toilet room the defendant saw Prosper Matlock enter the toilet room; that the defendant immediately opened the door of the toilet room and saw Prosper in conversation with Leturno, the juror aforesaid, and that upon defendant opening the door they each jumped and moved rapidly away.   It was proper for the court to consider counter-affidavits on this question, and counter-affidavits were filed by the juror and by Prosper positively denying each and every allegation as to their meeting in the toilet or having any conversation.   The bailiff in charge of the jury swore that he took special pains to keep the jury together and to prevent anyone from communicating with them; that he accompanied them to the toilet when they went there after the case had closed and went inside with them; that the jury remained together thereafter at all times, and that he observed Leturno and never at any time saw any person communicate with him or any improper conduct by him; that if any conversation had occurred in the toilet which could be heard from the door, between Leturno and Prosper, he would have been in a position to hear it; that he never heard the conversation and believes to a moral certainty that no such conversation ever took place, either in the toilet or elsewhere, and that he at no time saw Prosper attempt to converse with

any juror in the case. These three witnesses for the People are further corroborated by an affidavit of Alonzo E. Martin, formerly county truant officer and assistant county superintendent of schools, who testified that on the day of the trial he entered the court room about the time the case was closed and the jury were leaving the court room; that Prosper Matlock at that time was seated in the court room and that he sat down with him and talked to him for at least five minutes, and that during that time Prosper never left the court room. The court very properly overruled the motion for a new trial for all the reasons aforesaid.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*