The People of the State of Illinois, Plaintiff-Appellee, *v.* Philip Slay-ton, Defendant-Appellant.

(No. 72-230;

Second District—January 31, 1974.

Ralph Ruebner, Deputy Defender, of Elgin (Richard Wilson, Assistant Appellate Defender, of counsel), for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Philip Slayton, was convicted of burglary following a jury trial, and sentenced to 2-3 years in the penitentiary. In his appeal, defendant contends that he was not proven guilty beyond a reasonable doubt. Alternatively, he argues that his sentence should be reduced under the Unified Code of Corrections.

Defendant was tried with a co-defendant, Bob Robinson, for the October 5, 1971, burglary of the Lite House Lounge in Waukegan. Jerry Paschall was also indicted for the same offense, but pleaded guilty and testified as an accomplice witness against Robinson and defendant.

Paschall testified that he, Robinson and Slayton drove to the Lite House Lounge at approximately 1:30 A.M. October 5, 1971, after having been together earlier in the evening at the Mamma Mia's Tavern. The three of them then walked to the back door of the Lite House Lounge and tried to break in with angle irons. This failed and Robinson and the defendant went to the front door located at the same south side of the building. Robinson broke the glass in the door with the angle iron while Paschall remained at the back entrance. Robinson and defendant went in and defendant came to the back door and opened it for Paschall while Robinson stayed in the back room to look for whiskey. Paschall and defendant found a cigar box with change in it around the bar area. Paschall broke open a pool table coin slot, the change fell out and he and defendant put it on the pool table and into their pockets. Paschall related that he and defendant also tried to break into the coin box of a cigarette machine and in trying to pick it up it fell on defendant's foot and broke open, causing cigarettes and money to spill out. Paschall took the money and cigarettes but after the machine fell on his foot defendant left through the back door.

As Paschall proceeded to take six bottles of whiskey, he noticed a squad car across the street. He and Robinson then left the lounge and put the money, cigarettes, and whiskey into a 1971 Pontiac and left the area. The police pursued and Paschall and Robinson abandoned the car. Both were arrested in a nearby swamp-like area.

Paschall testified that after he was apprehended he was questioned in a police car by Detective Haley. He first told Haley that it was only he and Robinson who were involved, but stated on the witness stand that this statement was not the truth. When he talked later to Detective Stevenson he implicated the defendant Slayton as well. Paschall stated that at the time he made his statement to Detective Stevenson implicat-

ing the defendant no promises were made to him. After Paschall had spent approximately 60 days in jail he was offered his immediate release, a 60 day suspended sentence, with 3 years probation and credit for time served in exchange for his plea of guilty and truthful testimony about the burglary. He accepted the offer.

On cross-examination Paschall stated that he did not mention a "Junior Horn" to Detective Haley. It was brought out that before his arrest, Paschall was living at Slayton's apartment, along with defendant's wife, Bob Robinson, and Melvin "Junior" Horn; and that both Horn and defendant are American Indians.

Officer Mason of the Waukegan Police Department testified that at approximately 1:45 A.M. he spotted the broken glass door of the Lite House Lounge and then saw a 1971 green Pontiac with its lights off, slowly moving north of the Lite House; that the car then turned north on to Greenbay Road and accelerated to a high rate of speed. The officer testified that the car appeared to contain 3 subjects, but that the third person may have been an optical illusion. He pursued the vehicle to where it was abandoned.

Officer Smith of the Park City police testified that he apprehended Bob Robinson from a nearby swamp-like area.

There was testimony that the abandoned automobile contained bottles of whiskey, cigarettes, and coins in a Harvester cigar box, which box the owner of the Lite House Lounge recognized as his own. Both Robinson and Paschall were found to have pockets full of coins when apprehended.

On October 5, 1971, about 2:00 P.M., defendant was arrested at his home by Officer Holiday. At the time he was arrested defendant was wearing an old pair of shoes which were muddy, and was limping on his right leg. He told the officer that he got the limp in a fight at the Tic-Tok Tavern.

Detective Haley testified for the defense that he saw Paschall on October 4th, the evening of the burglary, about 7 to 8 P.M. with Bob Robinson and Melvin "Junior" Horn. Haley testified that when he apprehended Paschall after the burglary he asked him who was with him at the Lite House Tavern; that first Paschall denied participation, but after Haley informed him that he had observed him with two other people earlier in the evening and asked him again about the burglary Paschall then told him that he was with a Mr. Bob Robinson and another man whom he had just met that evening whose name he did not know. Haley then asked Paschall if this other man was an Indian, due to the fact that he had seen him earlier with Bob Robinson and "Junior Horn" who was also an Indian, and Paschall answered that he was. Haley testified that

he then asked him if this was Melvin Horn that he was with, the Indian, and that Paschall answered "Yes, I guess so." On cross-examination, however, when the State's Attorney asked if Paschall used the name or stated to Paschall that Horn was involved in the burglary, Haley answered no. Haley also admitted that the questioning of Paschall was not specific enough to make sure that Paschall was not talking about 7 o'clock at night instead of the time of the burglary.

The defense introduced testimony that defendant was in a tavern about midnight before the burglary and was asked to leave. When he did not, the witness slapped the defendant with the back of his hand causing him to fall down. The witness stated that he did not step on defendant's foot and that the defendant walked straight out, pretty fast after he was struck. The witness did not notice whether defendant was limping when he left.

Benny Robinson, the brother of the co-defendant Bob Robinson, was tending bar at Mamma Mia's on the night of the burglary. He testified that he saw Slayton, Robinson and Paschall at the bar at midnight; that between 1:30 and 2:00 P.M. defendant and Robinson left the bar, stating that they were going to get something to eat. On cross-examination, the witness said that the time the three arrived at the bar was 11 o'clock.

The defendant contends that the sole evidence against him consisted of the uncorroborated and inconsistent testimony of the one witness Paschall, who was an accomplice and who was rewarded by leniency in a plea for testifying, and that on the whole record the evidence was insufficient to prove defendant guilty beyond a reasonable doubt.

■■ While the testimony of an accomplice must be scrutinized with caution, the uncorroborated testimony of an accomplice is sufficient to convict if the testimony proves guilt beyond a reasonable doubt. (*People v. Alexander* (1961), 21 Ill.2d 347, 351; *People v. Hammond* (1970), 45 Ill.2d 269, 279; *People v. Mostafa* (1971), 5 Ill.App.3d 158, 175.) When an accomplice witness has hopes of rewards in the prosecution of the case in which he testified, then his testimony should not be accepted unless it carries with it absolute conviction of its truth. *People v. Hermens* (1955), 5 Ill.2d 277, 285-6; *People v. Mostafa* (1971), 5 Ill.App.3d 158, 176.

Reviewing the record before us under these standards and applying also the familiar rule that the weight of disputed evidence and the credibility of witnesses is to be judged by the trier of fact (see *People v. Novotny* (1968), 41 Ill.2d 401, 412), we conclude that the defendant was proven guilty beyond a reasonable doubt.

The testimony of the accomplice, Paschall, when carefully scrutinized has a substantial basis of credibility. First, Paschall's account of his own

participation in the crime corresponds in all material aspects with the testimony of the police. The Lite House Lounge was burglarized, the glass door on the front south side was broken, the getaway car contained the fruits of the crime and Paschall and Robinson were apprehended while attempting to hide in a nearby swamp-like area with their pockets full of coins. The inconsistencies in Paschall's testimony as to his own participation were relatively minor, based in the main on variances between his pre-trial statements and his testimony at trial as to the amount of whiskey and coins he took and his relative position in the tavern during various times in the course of the burglary. The contradictions were not sufficient to impeach the witness's testimony on major issues or sufficient to substantially damage his credibility. See *People v. Karatz* (1936), 365 Ill. 255, 257.

Paschall was, of course, in the position to know who was involved with him in the burglary. His implication of Bob Robinson was fully corroborated by the evidence.

There are also circumstances in the record which strongly tend to corroborate Paschall's testimony that the defendant Slayton was implicated. The presence of Slayton at Mamma Mia's, which was near the locale of the crime, at the approximate time of the crime and in the company of Paschall and Robinson is clearly established in the evidence. The fact that defendant was limping when arrested some twelve hours after the burglary lends credence to Paschall's testimony that a cigarette machine fell on defendant's foot during the course of the burglary; and the jury was not required to believe defendant's version of the cause of the limp.

The defendant relies heavily on the testimony of Officer Haley as defendant's witness to show a reasonable doubt of his guilt. It appears from the record that Haley believed Paschall was implicating "Junior" Horn as the third participant in the burglary and that this resulted in information being broadcast for the arrest of Horn initially. It further appears, however, that Haley's belief was based on the inference arising from the fact that he had seen Paschall with Horn and Robinson earlier in the evening. Paschall in his statement referred to "another man whom he had met that evening"; and when Haley asked him if that man was an Indian, Paschall said he was. It would appear that Haley assumed that Paschall was talking about Horn who was an Indian and had been seen by Haley with Paschall earlier. The fact that Paschall at no time mentioned Horn's name in his statement and the further fact that defendant was also an Indian would account for Haley's belief. Moreover, Haley admitted on cross-examination that his questioning of Paschall may not have been specific enough to assure that Paschall was not talking about a person who he had been with earlier in the evening

when Haley first saw him rather than relating who was present at the scene of the burglary. The jury could well have concluded that Haley's testimony did not impeach Paschall when the latter testified at trial that the defendant was the third person involved in the burglary.

■■ The circumstances surrounding Paschall's testimony in the case did not create a reasonable doubt of defendant's guilt on the whole record nor do they negate the conclusion that Paschall's testimony, although that of an accomplice, carries with it absolute conviction of its truth. The sentencing inducements which plaintiff was given were thoroughly disclosed to the jury. The negotiations which preceded the testimony began some 60 days after Paschall had already made a statement implicating defendant and were on the basis that Paschall tell the truth at trial.

The cases cited by defendant dealing with accomplices are distinguishable on their facts. In *People v. Mostafa* (1971), 5 Ill.App.3d 158, there were circumstances which clearly led the court to believe that the State did not truthfully relate the accomplices' agreement to testify against the defendant. The accomplices had fraudulently sought to feign incompetence, admitted that they had lied to the court in their representations, their testimony was wholly uncorroborated and contained material contradictions; and the defendant was shown by character witnesses to have a good reputation. In *People v. Coddington* (1964), 31 Ill.2d 468, the accomplice's testimony was thoroughly impeached; and the prosecution's promise of favorable recommendations in exchange for the accomplice's testimony was not disclosed until after the defendant was found guilty. Similarly in *People v. Hermens* (1955), 5 Ill.2d 277, a new trial was ordered on a total record which showed that the testimony of the accomplice lacked material corroboration, was denied not only by the defendant but by another accomplice, and was shown to be unworthy of belief. In addition, prejudicial statements about other offenses were made at the trial requiring reversal.

■■ Since the provisions of the Unified Code of Corrections apply to cases pending on appeal whenever the sentences under its provisions are less than those of the prior law (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1008—2—4), defendant's minimum sentence on the burglary conviction must be reduced to comply with the indeterminancy requirement of the new Code for Class II felonies. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c) (3).) The State contends that defendant's sentence under the new Code would not be less than the one he received because under the Code a 3 year additional parole term is automatically added to the term of imprisonment and becomes a part of the sentence imposed. (See Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(e) (2).) For

purposes of determining the applicability of the new Code of Corrections to cases not finally adjudicated, this court uses the actual term of imprisonment as the criterion to determine whether penalty provisions are less under the new Code than under prior law. (*People v. Robinson* (1974), 16 Ill.App.3d 919; *People v. Smith* (1973), 10 Ill.App.3d 501, 506.) Adopting the State's view would create an unrealistic assessment of what constitutes a lesser sentence. Accordingly, to achieve conformity with the provisions of the Unified Code of Corrections, the cause must be remanded for resentencing. *People v. Pickett* (1973), 54 Ill.2d 280, 285.

The judgment of conviction is affirmed, the sentence is vacated, and the cause is remanded for sentencing pursuant to the provisions of the Unified Code of Corrections.

Affirmed and remanded, with directions.

GUILD and RECHENMACHER, JJ., concur.