The People of the State of Illinois, Plaintiff-Appellee, *v.* Nicholas DeBartolo, Defendant-Appellant.

(No. 73-34;

Second District (1st Division)—January 22, 1975.

Thomas H. Stern, Thomas S. Fins, and Harry G. Fins, all of Chicago, for appellant.

Ralph J. Gust, Jr., Assistant State's Attorney, of Wheaton, for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted of theft over $150 (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)) following a jury trial. He was sentenced to 2-5

years in the penitentiary. On appeal, defendant contends that he was not proven guilty beyond a reasonable doubt and that various trial errors require reversal. Nicholas DeBartolo, the defendant (together with one John Owen), were charged by indictment with the theft of 20 "Hood" brand tires, alleged to have a value of more than $150, from Zayre of Illinois, a corporation. Brandon LeRoy Page, a 16-year-old minor at the time of the crime, and who admitted that he participated in the theft, was the principal witness for the State.

Page testified that on February 18, 1970, he and DeBartolo drove in defendant's truck to the Zayre Automotive Center in Addison. The pickup truck had been fitted with wooden sides by the witness some 2 or 3 weeks prior to this time at defendant's direction. DeBartolo drove his vehicle into one of the six automotive stalls after someone opened a service door. John Owen, a mechanic at Zayre's, was working in the bay area of the automotive center. There were no other people in the area except for a woman employee from the store whom DeBartolo asked whether she could sell him a tape. While DeBartolo went to Zayre's merchandise section, which was separated from the automotive center by a wall, with the employee, Page testified, he and Owen loaded 28 tires onto the truck. Page said that Owen told him to put the tires in the truck and to put the tarpaulin in the back of the truck over them, which he did, and that he and Owen had no other conversation in the approximately 10 minutes that it took to complete the loading. That DeBartolo then returned with some tape he had purchased in the store and asked Page to collect his change and receipt.

The witness said DeBartolo was pretending that he was getting an oil change and that he thought that Owen placed a gallon and a quart of oil on the front seat of the truck. DeBartolo then left the area. Page remained with Owen for approximately 15 minutes more while Owen put his tools away since it was close to 6 o'clock in the evening. The witness testified that he then accompanied Owen to "Murph's Gas Station" where he saw defendant's truck. He said he also saw defendant give Owen about $300 at the station. He said that he did not hear any conversation at the time of the exchange of the money.

Page further testified that on the following Sunday he met the defendant at "Murph's Gas Station"; that they then loaded the tires on a "U Haul" trailer and drove to "Maxwell Street" where they unloaded the tires and some tools they had brought and began selling the tires and tools on the street. He said that he and defendant also sold tires at the same place the following Sunday accompanied by a friend, who did not appear or testify.

There was evidence that Page had been convicted previously of a

burglary in which the defendant DeBartolo was the victim; that Page was on probation for that offense both when he participated in the offense here involved and when he testified; and that Page was neither being prosecuted for his participation in this offense nor had any action been taken to revoke his burglary probation. Page conceded on cross-examination that a police officer drove him to court each day during his trial testimony but claimed he was promised nothing in exchange for his testimony. Page also admitted that he was angry at defendant when he committed the crime against him but "didn't know" whether he was still angry at him when he testified. There was evidence that Page had been hired as an employee of Linemaster by defendant who was a supervisor of the firm and that he had been recently discharged. Page was not certain on cross-examination of the exact times he arrived and left the Zayre store, but said they were approximate times.

Sue Young testified for the defendant. She was the secretary at the Linemaster Tool Company where DeBartolo worked. She identified defendant's time card for February 18, 1970, which showed that although the normal working hours were from 9 o'clock to 5:30 or 6 o'clock, defendant had worked on February 18 from 10:30 A.M. until 9 P.M. She said that she recalled the defendant did not leave the Linemaster building between 5 and 6:30 on February 17 or 18, because she was asked to join defendant and Mr. Linemaster in a pizza for supper on those dates. A receipt for a pizza on February 18 was admitted into evidence.

On cross-examination the witness admitted that the defendant wrote the time in on the time card which was accepted for pay purposes, since the company had no time clock. She admitted that she did not know whether the defendant and Linemaster had dinner together but assumed that because Linemaster could not have eaten a large pizza ordered by himself. The witness claimed that her acquaintance with defendant was only in the course of employment. In rebuttal, however, a witness testified to seeing defendant's car in her driveway on many occasions.

Defendant argues that the testimony of an accomplice is to be examined with extreme caution (*People v. Johnson* (1925), 317 Ill. 430, 434-435), noting that the accomplice Page had motives of revenge and self-protection, and that an alibi defense must be given considerable weight when, as here, the accomplice's testimony is the only contradictory evidence. (*People v. Hermens* (1955), 5 Ill.2d 277, 285-286.) Defendant contends also that the testimony of Page is improbable because it is unlikely that there would be no other witnesses in the Zayre Automotive Center in the time period involved, that there would be no conversations between the participants, and that the allegedly stolen merchandise would thereafter be sold on a crowded city street.

■■ The State responds that defendant's argument is directed to questions of credibility which were for the jury, properly instructed. We agree. While the testimony of an accomplice is subject to careful scrutiny, it is sufficient to convict if it satisfies the trier of fact beyond a reasonable doubt. (*People v. George* (1971), 49 Ill.2d 372, 382.) The fact that the accomplice is a self-confessed criminal and has expectation of leniency is a factor which the jury may take into account in weighing credibility but does not of itself raise a reasonable doubt of guilt. (*People v. George*, 49 Ill.2d 372, 382; *People v. Coleman* (1971), 49 Ill.2d 565, 573.) The testimony of the accomplice in this record was not substantially impeached, and the so-called improbabilities were matters for the jury to weigh.

■■ The case of *People v. Hermens*, 5 Ill.2d 277, cited by defendant, does not a dictate a different conclusion here. In *Hermens*, one accomplice denied the testimony of the other and corroborated the testimony of the defendant. In addition to the fact that the State's witness was thoroughly discredited, prejudicial statements were made about other offenses. (See *People v. Slayton* (1974), 16 Ill.App.3d 910, 915.) On the whole record before us we conclude that there was evidence from which the jury could properly find that the defendant was guilty beyond a reasonable doubt.

Defendant further contends that even if Page's testimony is taken as true there is no proof of felonious intent in the taking of the tires because Zayre's employee, Owen, made the sale to defendant, and there was no showing that they were coconspirators. The proof of the necessary intention is an essential element of the offense of theft as defendant argues. (*People v. Betts* (1937), 367 Ill. 499, 502-503.) But more persuasive, in our view, is the argument of the State that the circumstances are sufficient to compel the conclusion that defendant knowingly obtained control over property with the intention to deprive the owner permanently of its use and benefit. *People v. Baddeley* (1969), 106 Ill.App.2d 154, cited by defendant on this issue, involved essentially a bona fide although mistaken belief in the right to reclaim property without a court order and is therefore factually dissimilar. Also *People v. Ibom* (1962), 25 Ill.2d 585, is clearly distinguishable on its facts. The entire record in this case does not leave us with a grave and substantial doubt of the felonious intent on the part of the defendant.

Defendant next contends that he has been improperly sentenced for a felony and that his argument is not based on either the instruction given to the jury nor the claim that the verdict form was improper.

■■ The indictment under which defendant was tried charged him with theft in excess of $150; but the form of the verdict did not specify

any value. Defendant contends that the value of the subject of theft must be made a part of a jury verdict to support a felony conviction, particularly when value is substantially disputed. He reasons that *People v. Dell* (1972), 52 Ill.2d 393, stands for the proposition that the absence of any reference to value in a theft verdict results in a conviction of the misdemeanor offense of theft only. We disagree. *Dell* is factually distinguishable. In *Dell*, a figure of $250 was found to have been inserted in the verdict form before it was submitted to the jury, thus precluding the determination by the jury of the disputed fact of value. Here, no figure was inserted in the verdict, and the jury was given the option of finding the defendant either guilty of theft or not guilty under specific instructions and not by general reference to the indictment. The issues instruction specifically required the State to prove:

"FOURTH: That the value of the tires was more than $150.00." No instruction was tendered or given as to any lesser included offense. Thus, any possibility that the jury might have found defendant guilty of a lesser offense or any ambiguity in the jury's verdict was eliminated. See *People v. Harden* (1969), 42 Ill.2d 301, 306-7.[1]

■■ Next, defendant contends that the State failed to prove the fair cash market value of the property (*People v. Rose* (1960), 19 Ill.2d 292, 295). He argues that the State's valuation witnesses were security personnel without sales experience and therefore without the requisite expertise to set a value on the stolen tires, and that it was error to base their testimony on the retail price of the tires. The argument is not persuasive. In view of the nature of the business of Zayre's, the retail price of stolen property is a proper measure of the fair cash market value of the item. (*People v. Hansen* (1963), 28 Ill.2d 322, 340; *People v. Briseno* (1972), 2 Ill.App.3d 814, 816.) The witnesses were competent to testify as to the retail value of the stolen items. (See *People v. Leman* (1968), 95 Ill.App.2d 212, 219.) One witness stated that the minimum price per tire of the kind that were missing regardless of size was $25 and that the retail value of the 20 missing tires was more than $150. Another witness, the security manager of the company, testified that the price of Zayre's smallest size and least expensive unmounted whitewall tires as of February 1970 was approximately $15, and that she had oc-

---

[1] Defendant did not object to the form of the verdict either at trial or in his post-trial motion. The State argues that we should apply the waiver doctrine. (*E.g., People v. LeMay* (1966), 35 Ill.2d 208, 212.) We have chosen, however, to consider the issue on its merits. (See *People v. Dell*, 52 Ill.2d 393.) Also, while defendant apparently claims that *Harden* was in effect overruled by the majority opinion in *Dell*, we do not conclude that the absence of reference to *Harden* in the majority opinion means any more than the majority did not find it applicable to the facts. Cf. *People v. Eastland* (1973), 11 Ill.App.3d 271, 272.

casion to view price books of the retail price of the tires. In addition, it should be noted that Owen, a codefendant at trial, testified in his own behalf that the whitewalls at Zayre's could have been priced as low as $9 and as high as $30. Under any view of the evidence, therefore, the value of the stolen tires exceeded $150.

■■ Defendant also contends that there was a failure to prove the corporate identity of "Zayre of Illinois, a corporation." It is undisputed that where ownership of stolen property is alleged to be in a corporation, the corporate existence must be proved. (*People v. Gordon* (1955), 5 Ill.2d 91, 95.) Proof of user is prima facie evidence of the corporate existence (Ill. Rev. Stat. 1973, ch. 38, par. 160—1), but this method of proof is not exclusive, and in absence of evidence to the contrary the existence of a corporation may be shown by the oral testimony of a person with knowledge of the fact. *People v. McGuire* (1966), 35 Ill.2d 219, 232.

■■ Defendant argues that the State attempted and failed to prove the corporate existence by the testimony of the two security officers. That one, Mrs. Spoors, did not have knowledge of the nature of Zayres but could only give that as the name of the business, and the other, Mrs. Petrucci, came to the conclusion that Zayres was a corporation because she looked at the corporate charter, which was not offered or introduced. However, the witness Spoors did testify that to the best of her knowledge "Zayres is a corporation," and without objection answered the question:

"Q. Is it Zayre's of Illinois, a corporation?

A. Yes."

And Mrs. Petrucci testified that the name of Zayre corporation as it existed in February of 1970 in Addison was "Zayre of Illinois, incorporated" and testified further as follows:

"Q. Is that a corporation?

A. It is."

This proof of corporate existence, though not artful, was sufficient in the absence of contrary evidence. *People v. McGuire*, 35 Ill.2d 219, 231-232.

Defendant's next contention is that the jury deliberations were contaminated by the furnishing of soup and beverage cups which contained printed legends including "A PUBLIC MESSAGE FROM YOUR AUTOMATIC VENDOR", "SUSPICIOUS PERSONS?", "CALL THE POLICE", "LOCK OUT CRIME", "LOCK YOUR CAR", and "NEVER GIVE A BURGLAR AN EVEN BREAK". Defense counsel learned of this after the jury verdict had been returned and filed a post-trial motion for a mistrial. The trial judge denied the motion in a written opinion.

In the opinion the court recited the representation of counsel that the cups had been placed in the vending machines by the vendor and

were not requested by any agency of county government, that defendant did not contend that any attempt at jury influence was involved but mere inadvertence, that following the discharge of the jury the State's Attorney obtained oral statements from each juror which were reduced to transcripts, that a review of the transcripts indicated that the few jurors who remembered the cups made a joke of them and that none felt his or her verdict was in any way influenced by the cups. The court concluded that the affidavit of a jury member may be used in support of but not to impeach a jury verdict (*Kelley v. Call* (1944), 324 Ill.App. 143, 147-148), that a verdict would not be disturbed unless an invasion of the jury process was calculated to influence the verdict of the jury (*People v. Brothers* (1932), 347 Ill. 530, 547), and that while the cups should not have been given to the jury, the error was harmless.

Defendant argues that the rule against impeachment of a jury verdict is to prevent a juror from later changing his verdict and that the rule is not applicable to a charge that a verdict has been contaminated by inflammatory and prejudicial material. In the latter situation, defendant argues that the verdict must be reversed on due process grounds without the necessity of a showing that the jury actually considered or was influenced by the intrusion. Defendant cites *Parker v. Gladden* (1966), 385 U.S. 363, 17 L.Ed.2d 420, 87 S.Ct. 468 (bailiff communicated to the jury that defendant was guilty and if wrong the higher court would correct); *People v. Holcomb* (1938), 370 Ill. 299 (judge permitted non-admitted exhibits to go to jury room over objection). He argues that the legends on the cups are prejudicial on their face, and if we do not so consider them, that in the alternative we should remand for an adversary hearing in accordance with due process (citing *Morrissey v. Brewer* (1972), 408 U.S. 471, 481, 33 L.Ed.2d 484, 494, 92 S.Ct. 2593) to determine the effect of the materials on the jury's verdict.

The general rule has been well established that the affidavits or testimony of jurors cannot be received to impeach their verdict. (*People v. Nuccio* (1973), 54 Ill.2d 39, 49; *People v. Pulaski* (1958), 15 Ill.2d 291, 300.)[2] We agree with defendant, however, that the rule does not preclude an inquiry into the effect of prejudicial influences upon the deliberations of a jury. But we do not agree that the presence of material which could conceivably be prejudicial must result in a reversal without the necessity

---

[2] As the trial court indicated there is some authority that testimony or affidavits of jurors may be received in support of rather than to impeach a jury verdict. (*People v. Matlock* (1922), 303 Ill. 399, 409; *Kelley v. Call* (1944), 324 Ill.App. 143, 147-148.) The issue is not determinative here, and we do not therefore decide that a different rule applies to jurors' affidavits in support of a jury verdict rather than in impeachment of it. But see *People v. Hryciuk* (1954), 5 Ill.2d 176, 184; Annot., 93 A.L.R. 1449, 1450, 1451 (1934).

of a showing that the jury considered and was influenced by it. We find some similarity to cases in which newspaper comments relating to a particular case are alleged to have influenced a jury in a criminal case. The rule has become well established in such cases that a trial judge has considerable discretion in assuring himself that the offensive material did not create prejudicial error. (*People v. Malmenato* (1958), 14 Ill.2d 52, 63-64; *People v. Hryciuk* (1954), 5 Ill.2d 176, 185.) The burden of showing an abuse of discretion is upon the complaining party. (*United States v. Carruthers* (7 Cir. 1945), 152 F.2d 512, 518; *cert. denied,* 327 U.S. 787, 90 L.Ed. 1014, 66 S.Ct. 805.) We do not agree that the inquiry by the court must be conducted as an adversary proceeding. See *Marshall v. United States* (1959), 360 U.S. 310, 312, 3 L.Ed.2d 1250, 1251, 79 S.Ct. 1171.

■■ The defendant has not sustained his burden of showing that the judge abused his discretion in this case. The cups were not a calculated interference (see *Bulliner v. People* (1880), 95 Ill. 394; Annot., 31 A.L.R. 2d 417, 436 (1953)). The legends on the cups were general statements of a kind which jurors would see and read in the course of their common experience and did not deal specifically with defendant. As in *People v. Zamorano* (1974), 16 Ill.App.3d 807, 811, the probability of prejudice is not clearly evident. In our view the trial judge did not err in denying defendant's motions.

■■ Defendant's final contention is that the case must be reversed because the State failed to prove the defendant's age and the jury verdict contained no finding as to age. He argues that there therefore is no proof that he was 13 years of age or over, so as to be subject to criminal prosecution (Ill. Rev. Stat. 1973, ch. 38, par. 6—1), or over 17, so as to be tried as an adult (Ill. Rev. Stat. 1973, ch. 37, par. 704—1). We find no merit in this argument. The proof of defendant's age was not an element of the offense of theft. (Ill. Rev. Stat. 1973, ch. 38, par 16—1.) The failure to prove the age of the defendant must be raised by way of affirmative defense (Ill. Rev. Stat. 1973, ch. 38, par. 6—4). The defendant did not raise the affirmative defense.

For the reasons given we affirm the judgment below.

Affirmed.

GUILD and HALLETT, JJ., concur.