2024 IL App (1st) 221306-U

Fourth Division
Filed March 14, 2024

No. 1-22-1306

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>    Plaintiff-Appellant,<br><br>    v.<br><br>AARON HUNT,<br><br>    Defendant-Appellee. | Appeal from the<br>Circuit Court of Cook County<br><br>No. 20 CR 08027<br><br>The Honorable Joanne F. Rosado,<br>Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1  *Held:*  The dismissal of the indictment charging aggravated criminal sexual abuse of a child is reversed because the defendant did not clearly show that passage of at least 15 years between the offense and the alleged victim coming forward caused him actual and substantial prejudice.

¶ 2  According to the State, when Aaron Hunt was a young teenager, he forced his seven- or eight-year-old cousin M.F. to perform oral sex on him. When she was 14 years old, M.F. disclosed the incident to her mother and then to other members of her family, who did nothing and never talked about it again. Another 10 years went by. Finally, 15 (or more) years after the fact, M.F. disclosed the incident to law enforcement. Within a matter of months, the State charged Hunt with aggravated criminal sexual assault, alleging that Hunt had committed the offense during a two-year period that was based on M.F.'s estimate that she was seven or eight years old at the time. Citing the broad period alleged in the indictment and the failure of either M.F. or her family to

come forward sooner, the trial court granted Hunt's motion to dismiss the indictment on due-process grounds. Because Hunt has not clearly shown that the preindictment delay actually and substantially prejudiced him, we reverse and remand.

¶ 3                                    BACKGROUND

¶ 4      In early 2020, the Chicago Police Department received information that, some 15 years earlier, Hunt had forced a younger male cousin to perform sexual acts with him when both were minors. During the ensuing investigation, two of Hunt's younger female cousins came forward and reported similar incidents. One of those two women was 24-year-old M.F., who alleged that, when she was seven or eight years old, Hunt forced her to perform oral sex on him while they were both spending the night at her aunt's home. Several years later, when she was about 14 years old, M.F. told her mother what had happened in a letter. Her mother took M.F. to her grandmother's house, and M.F. repeated the allegations in front of Hunt and other family members. After she told her story, the adults sent Hunt and M.F. to separate floors while they discussed the matter. Not long after, she left with her mother, and the incident was never discussed again.

¶ 5      Hunt was arrested in August 2020. The State filed an indictment charging him with one count of aggravated criminal sexual assault. See 720 ILCS 5/12-14 (West 2004). The indictment alleged that, "on or about August 26, 2003 and continuing on through August 25, 2005," Hunt knowingly made contact with M.F.'s mouth using his penis when he was under the age of seventeen and she was under the age of nine. See *id.* § 12-14(b)(i). The two-year period specified in the indictment ran from M.H.'s seventh birthday (when Hunt would have been 13 years old) through the day before her ninth birthday (when he would have been 15 years old). The State alleged, and Hunt concedes, that the charge was brought within the extended limitations period.[1]

---

[1]   In August 2003, the extended limitations period for aggravated criminal sexual assault when the alleged victim was under 18 years old would have expired 20 years after M.F. turned 18. See 720 ILCS 5/3-6(j) (West 2004). Today, there is no limitation on such prosecutions, which "may be commenced at any time." 720 ILCS 5/3-6(j)(1) (West 2024).

¶ 6     In February 2022, Hunt filed a motion to dismiss the indictment. Relying on the court's inherent authority to dismiss an indictment to avoid depriving the defendant of due process or a miscarriage of justice, Hunt argued that it was fundamentally unfair to prosecute him in adult criminal court for an offense that would have been treated as a delinquency matter in juvenile court had it been addressed while Hunt was still a minor. He highlighted three key consequences of an adult prosecution rather than a juvenile proceeding. First, instead of juvenile detention that would have expired when he turned 21 years old, he was facing up to 30 years in prison. Second, unlike juvenile proceedings, his criminal prosecution was public, not confidential. Third, while a juvenile adjudication would still have required him to register as a sex offender for ten years, he would have been able to petition to be removed from the registry after only five years, possibly as early as the age of 18. A criminal conviction, on the other hand, would require registration for the full ten years, all of which would affect his adult life. Hunt also argued that the lapse in time left open the possibility that the alleged incident took place earlier than K.F. had estimated, which meant that he could have been younger than 13 years old and therefore not criminally liable. See 720 ILCS 5/6-1 (West 2004).

¶ 7     After considering the State's response and the parties' arguments at a short hearing, the trial court granted the motion and dismissed the indictment. It took particular note that the delay had come about because M.F. had reported the alleged incident to her family as a teenager but not to the police until she was well into adulthood:

> "In looking at it, the Court recognizes that in fact this is not newly-discovered information. This discovery was handled when the victim in this case was 14 years old. It looks like it's about—it's, what, maybe 12 years later that this is actually occurring.
>
> There is a significant amount of time in between the time that, one, it occurred, first; secondly that the family actually dealt with it, talked about it and made a determination, and at that point in time, according to the victim, she was 14 years old. At 18, at that point, she still had knowledge of

it and she could have went to the police at that point in time. Instead, she waits all these years to now come out and say this is what's going on." The court agreed with Hunt that the disparity between the likely result of a juvenile proceeding and the penalties available in a criminal prosecution "would prejudice him" and be "beyond fair." It therefore granted the motion to dismiss.

¶ 8       The State filed a motion to reconsider. It argued that Hunt had not shown substantial prejudice. Pointing out that M.F.'s allegations had not come to the attention of law enforcement until 2020, it also argued that there was no evidence that the State had delayed prosecuting him. In denying the motion to reconsider, the court once again emphasized that M.F. could have come forward sooner but chose not to:

"As the State states, to constitute a due process violation, it must be shown that the delay between crime and arrest or charge caused substantial prejudice to the defendant's right to a fair trial and the delay was an intentional device to gain a tactical advantage over the accused. That's an interesting statement because, clearly, this was discussed when the victim was a minor, allegedly. Her family knew about it. She knew about it. She turns 18, she's now an adult, she can pursue it. She chooses not to pursue it. She then goes even further, now we say she's 25, 26 almost and now is the first time, for whatever reason, she comes out and she wants to pursue it. I believe that is definitely a delay and that's a substantial prejudice. She had plenty of time—no, as a child, we don't expect her to go forward and reach out to the police and go forward with allegations. However, when she does become an adult, she has plenty of time. She still knows Mr. Hunt. They're relatives. She has an opportunity to go to the police for approximately five, six years after the time she becomes an adult and it's just at this particular time that she decides to come forward. It's definitely more prejudicial than anything to come forward at this time being that she's known about it this

entire time. There's—it's a nonreasonable amount of delay and it is a substantial prejudice, so the previous ruling will remain the same."

¶ 9 After its motion to reconsider was denied, the State filed a timely notice of appeal under Illinois Supreme Court Rule 604(a)(1) (eff. Dec. 23, 2022).

¶ 10                                      ANALYSIS

¶ 11 Trial courts are inherently empowered to dismiss an indictment "where there has been a clear denial of due process." *People v. Lawson*, 67 Ill. 2d 449, 455 (1977); see U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art I, § 2. We apply a mixed standard of review when the trial court dismisses an indictment on due-process grounds. Whether allowing a prosecution to go forward would violate the defendant's right to due process is a legal question that we review *de novo*. *People v. Stapinski*, 2015 IL 118278, ¶ 35. We also consider *de novo* whether such a violation is prejudicial enough to justify dismissal of the indictment. *Id.* If we agree with the trial court on these preliminary questions, then its choice of dismissal as the appropriate remedy is reviewed for an abuse of discretion. *Id.*; *People v. Soto*, 2022 IL App (1st) 201208, ¶ 105.

¶ 12 In this case, the trial court dismissed the indictment based on a finding that the lengthy preindictment delay unfairly prejudiced Hunt. An "actual and substantial prejudicial delay before an indictment or arrest" is a basis for dismissing an indictment to avoid violating the defendant's due-process rights. *Lawson*, 67 Ill. 2d at 456. But the general risk of prejudice to the defendant from a delayed prosecution is primarily guarded against by statutes of limitations, which allow legislatures to strike the appropriate balance between that risk and the state's interest in enforcing the criminal law. *United States v. Marion*, 404 U.S. 307, 322-23 (1971); *Lawson*, 67 Ill. 2d at 457. Hence, the "real possibility of prejudice inherent in any extended delay" does not, on its own, violate due process. *Marion*, 404 U.S. at 325-26. When asked to dismiss an indictment based on a delay in bringing it, courts "must proceed with restraint and ascertain preindictment denial of due process only with certainty." *Lawson*, 67 Ill. 2d at 457. Allegations of prejudice that are "speculative or insubstantial" are not sufficient. *Soto*, 2022 IL App (1st) 201208, ¶ 106. In this

context, prejudice means "actual damage to a defendant's ability to obtain a fair trial." (Emphasis removed.) *People v. Goad*, 2013 IL App (4th) 120604, ¶ 29. One obvious example is when the passage of time impairs the defendant's ability to put on a defense. See *People v. Holcomb*, 192 Ill. App. 3d 158, 168 (1989). Prejudice does not include consequences of a delayed prosecution that do not affect the fairness of the proceedings, not even severe consequences such as making it difficult to find a job or interfering with rehabilitation efforts stemming from an earlier conviction. *Goad*, 2013 IL App (4th) 120604, ¶ 29.

¶ 13    A defendant seeking dismissal based on a preindictment delay "must come forward with a clear showing of actual and substantial prejudice." *Lawson*, 67 Ill. 2d at 459. If the defendant makes that showing, the burden shifts to the State, which must show that the delay was reasonable. *Id.* If both parties carry their respective burdens, then the court decides whether to dismiss "based upon a balancing of the interests of the defendant and the public." *Id.* The first question, then, is whether Hunt has clearly shown actual and substantial prejudice to him resulting from the delay between the charged offense, which allegedly took place at some point between 2003 and 2005, and his arrest and indictment in 2020. This question is dispositive because Hunt has not carried that burden.

¶ 14    In the trial court, much of Hunt's argument focused on how the delay means that he is now subject to the harsh criminal sanctions for aggravated criminal sexual assault rather than the more-lenient dispositions that would have been available in a juvenile-delinquency proceeding. But that argument is foreclosed by *People v. Fiveash*, 2015 IL 117669, which held that those differences do not offend due process when the criminal sentence calls for a term of years and the defendant would have been subject to discretionary transfer from juvenile court to adult court. *Id.* ¶¶ 43-45. Both of those circumstances are present in this case, and Hunt has abandoned that argument on appeal.

¶ 15    In this court, Hunt emphasizes that the delay was caused by M.F.'s family not reporting the alleged incident to police when she brought it to their attention at the age of 14 and by M.F. not reporting it on her own once she had reached the age of 18. But he does not explain why that reason

for the delay affected his ability to get a fair trial, and we do not see how M.F. and her family's failure to come forward sooner resulted in any prejudice beyond that inherent in the passage of time alone. This does not clearly show actual and substantial prejudice.

¶ 16   Hunt also argues that the delay makes it difficult to pinpoint when, exactly, the alleged incident happened, so the ages of both Hunt and M.F. cannot be determined with certainty. This is a reasonable concern. If the incident took place before his thirteenth birthday, Hunt could not be held criminally liable. 720 ILCS 5/6-1 (West 2004). If it took place on or after M.F.'s ninth birthday, then he would not have been guilty of the offense as charged. See 720 ILCS 5/12-14(b)(i) (West 2004). If M.F.'s estimate that the incident occurred when she was seven or eight years old is the only evidence the State has, it may well have a proof problem at trial. But Hunt has not shown that any difficulty in pinning down when the alleged incident occurred will deprive him of a fair trial. On its face, the indictment alleges that the incident took place "on or about" the two-year period between August 26, 2003, and August 25, 2005. That period falls after Hunt's thirteenth birthday but before M.F.'s ninth birthday on August 26, 2005. M.F.'s age is an element of the offense that the State will bear the burden of proving at trial. And while Hunt being at least 13 years old is not an element of the offense, infancy is an affirmative defense. 725 ILCS 5/6-4 (West 2004); *People v. DeBartolo*, 24 Ill. App. 3d 1000, 1008 (1975). If the evidence at trial raises the possibility that the alleged incident took place earlier than the alleged period, then Hunt can assert his young age as an affirmative defense, which would require the State to prove beyond a reasonable doubt that Hunt was at least 13 years old when it happened. 720 ILCS 5/3-2 (West 2004). Hunt has not shown why, in the circumstances of this case, that is not an adequate safeguard against the risk of him being convicted of an offense that he committed before the age of 13. Hence, this does not clearly demonstrate actual and substantial prejudice.

¶ 17   Hunt also has not shown that the two-year period alleged in the indictment is so vague or uncertain that it does not allow him to prepare a defense. An indictment need only state the date of the crime "as definitely as can be done." 725 ILCS 5/111-3(a)(4) (West 2020). In general, the State has no obligation to allege "the precise date" of the offense. *People v. Guerrero*, 356 Ill. App. 3d

22, 27 (2005). It only needs to "give some indication in the indictment as to when the offenses occurred." *Id.* It has done that here. To be sure, the two-year period alleged by the State is broad, but that is to be expected, especially given the age of the alleged victim. *Id.* ("In cases involving the sexual abuse of a child, flexibility is permitted regarding the date requirement."). But the precise date within that two-year period has no legal relevance to the charge, and Hunt has not articulated why it is necessary to know the exact date of the incident to prepare his defense. Again, this does not clearly show actual or substantial prejudice.

¶ 18    As noted, before obtaining a dismissal of an indictment based on preindictment delay, Hunt had the burden of clearly showing that allowing the prosecution to continue actually and substantially prejudices his right to a fair trial. *Lawson*, 67 Ill. 2d at 459; *Goad*, 2013 IL App (4th) 120604, ¶ 29. Based on the record before us, Hunt has not made that showing, which means his motion to dismiss the indictment should have been denied.

¶ 19                        CONCLUSION

¶ 20    Hunt did not clearly show that the pretrial delay in this case caused actual and substantial prejudice so as to violate his right to due process of law, so he was not entitled to dismissal of the indictment. Accordingly, we reverse the trial court's judgment dismissing the indictment and remand the cause for further proceedings.

¶ 21    Reversed and remanded.